[No. 4818.]

# SAMUEL McCULLOUGH v. THE BOARD OF EDU-CATION OF THE CITY AND COUNTY OF SAN FRANCISCO.

PUBLIC SQUARE IN SAN FRANCISCO.—The Board of Education of the City and County of San Francisco has no authority to appropriate a public square in said city and county, or any portion thereof, as a site for the erection of a school-house; nor has the Board of Supervisors any authority to authorize such appropriation.

CONTRACT ULTRA VIRES.—If the Board of Education of the City and County of San Francisco contracts with a builder to erect a school-house on a public square, the contract is *ultra vires*, and the builder can acquire no rights thereunder.

ILLEGAL CONTRACT.—A contract made in violation of law is void, and no damages can be recovered for its non-fulfillment.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

On the 6th day of December, 1870, the plaintiff contracted with the Board of Education of the city and county of San Francisco to construct a school-house on a portion of Hamilton Square, in said city and county. The board failed to fulfill the contract on its part by not placing the plaintiff in the possession of the ground where the house was to be built, and he brought this action to recover damages for its failure to carry out the contract on its part. The Board of Supervisors had passed a resolution authorizing the Board of Education to use the portion of the square on which the school-house was to be built for that purpose. Hamilton Square is on that portion of said city and county covered by the Van Ness ordinance. The ordinance, and the act of the Legislature ratifying it, are to be found in the Statutes of 1858, pages 51 to 56. The plaintiff had judgment. The court, on motion of the defendant, granted a new trial, and the plaintiff appealed from the order granting a new trial.

*J. W. Winans*, for the Appellant.

The supervisors had power to authorize a lot in a public square to be used for the erection by defendant of a school-

house thereon, and the authority they did so grant was valid and operative. (Consolidation Act, Sec. 68; Act of 1856, p. 164.)

This gives legislative authority to the Board of Supervisors to lease or otherwise appropriate public property of the city by adopting a certain form of procedure. (2 Dillon on Mun. Corp. 611–12, and cases there cited; *Polack* v. *Trustees*, 48 Cal. 490; *State* v. *Mayor, etc.*, 5 Porter (Ala.) 279, 309; *Langley* v. *Gallipolis*, 2 Ohio State Rep. 108–11; which last authority is so express in point that we solicit a reference thereto by the court.)

*Williams & Thornton*, for the Respondent.

The power of the Legislature is ample to regulate public squares and all public places, provided the uses and purposes of the dedication or grant are not changed. (See *Schumeier* v. *St. Paul & P. R. R. Co.*, 10 Minn. 104–5, etc.; *Le Clerq* v. *Gallipolis*, 7 Ohio, 217; *Brown* v. *Manning*, 6 Ohio, 298; *Com.* v. *Rush*, 14 Penn. State Rep. 188–9; *Com.* v. *Bowman*, 3 Burr, 206.)

In *Com.* v. *Bowman*, it was held that the right to put a court-house and offices on a public square was only legal by reason of usage; for the square was a highway, and neither the county nor the public could block it up to the prejudice of a public or individual.

A contract to build a school-house on such a square would then be illegal and void, and no recovery could be had on such a contract, nor could a recovery be had for breach of such a contract. (5 Robinson's Pr. 398, and cases there cited; Id. 407–8 et seq.; *Valentine* v. *Stewart*, 15 Cal. 387.)

By the Court:

The Board of Education had no authority to appropriate Hamilton Square, or any portion thereof, as a site for the proposed high school. The purposes for which the public squares may be used are those defined by positive law, and the erection of school-houses thereon is not one of these purposes. The resolution of the Board of Supervisors assuming to authorize the Board of Education to appropriate

a portion of this square for that purpose, though passed in due form, was inoperative, because the Board had no authority to devote a public square to that purpose.

The contract of the Board of Education, upon which the suit is founded, was consequently *ultra vires* in the extreme sense, and the plaintiff could derive no rights thereunder, since he was bound to take notice that the Board of Education could not, under any circumstances, acquire a right to occupy a public square for school purposes.

Order granting a new trial affirmed.