### H. P. Sachs v. Trustees of the Village of Towanda.

1. DEDICATION—*Meaning of the Word "Plaza," on Town Plats.*— Where the owner of a square or plat of ground, situated in a city or village, dedicates it to the use of the public and calls it a "plaza," but does not in any manner designate how it shall be enjoyed, the city or village authorities may assume control of it either as an open market place and common, or as a park, for the pleasure and recreation of the public.

2. SAME—*Intention of the Dedicator—How Determined.*—Where there is no specific in an instrument dedicating a plat of ground to the public as to the manner in which it shall be enjoyed, the intention of the owner in that regard may be ascertained of the instrument and the surrounding circumstances, and the authorities assuming control of it will not be permitted to put it to a use violative of such intention.

**Bill for an Injunction.**—Appeal from the Circuit Court of McLean County; the Hon. GEORGE W. PATTON, Judge, presiding. Heard in this court at the May term, 1898. Affirmed. Opinion filed December 2, 1898.

A. M. CONARD, attorney for appellant.

WELTY & STERLING, attorneys for appellees.

MR. JUSTICE HARKER delivered the opinion of the court.

This was a bill in chancery to enjoin the trustees of the village of Towanda from inclosing by fence a tract of ground donated to the public by the founders of the village.

In 1854 Jesse W. Fell and Peter H. Badeau laid off a tract of land situated on both sides of the Chicago & Alton Railroad right of way, in McLean county, into a town plat

and called it Towanda. In platting it they blocked out, near the center, a tract in the form of a parallelogram, measuring 620 feet north and south and 480 east and west. The railroad extends diagonally through it from northeast to southwest, entering it near the northeast corner and leaving it at the southwest corner. The railroad was built and the right of way, of 100 feet in width, acquired before the town was platted. Streets were laid out on the four sides of the rectangular tract and it was platted, showing lots abutting the right of way on either side, twenty-five feet in width and extending back 100 feet. The residue consisted of two triangular pieces, one in the southeast corner and the other in the northwest corner, and were marked on the plat "plaza." It is the triangular piece in the southeast corner that is in controversy in this suit. Ever since the town was laid out it has remained uninclosed and been used by the public as open common, and by the owners of lots abutting the right of way as a way of egress and ingress. In 1897 the trustees of the village determined to fence up these open places and make parks of them. A resolution was passed whereby it was provided that all of the one in controversy should be fenced, except sixteen feet adjoining the lots abutting the railroad, and that was to remain open as a driveway. The trustees began the erection of a barbed wire fence around it, when appellant, the owner of four of the lots, on which he conducts a lumber, coal and farm implement business, filed this bill and procured a temporary injunction restraining them from completing the inclosure. In the Circuit Court the cause was referred to the master for proofs and findings. On the master's report the court rendered a decree making the injunction perpetual as to twenty-five feet extending along next to the lots and dissolving it as to the rest of the plaza.

Where land has been dedicated to the public for a particular purpose, the city or village within whose limits the land is situated, has the right to control and improve it in such way as best to effectuate the purpose. Appellees are the proper authorities to control the property in question and to improve it in any manner they deem best for the

benefit of the public, consistent with the terms of the grant. They can not put it to a use inconsistent with the intention of the donors, however much desired by individual property owners or the general public. The intent of Fell and Badeau as to the manner and extent of the use of this small plat of ground must determine the rights of the parties to this suit.

Realizing the importance of the understanding which the court may have of the term "plaza," counsel have raised quite a controversy over the meaning of the word. On behalf of appellant it is contended that it means an open, uninclosed body of land to be used by the public as a market place or as an open common to ride or drive over. If that definition is accepted, and there is nothing in the record to show that the donors attached to the word a different meaning, it is clear appellees have no right to fence the tract, and appellant is entitled to the injunction prayed for. On behalf of appellee it is contended that a "plaza" is a park, ornamented with trees, flowers, walks, etc., either inclosed or uninclosed, set apart for the use of the public, and that no such meaning as that which requires it to remain uninclosed attached to it. A careful examination of the leading English lexicographers, and such other lights as we have found access to, shows a meaning more general and inclusive than that contained within the narrow definition contended for by appellant. Upon the other hand, a definition as narrow as that contended for by appellees can not be adopted by us. It is a word of Spanish derivation, and in Spain, Cuba, Mexico and parts of the United States settled by the early Spaniards, is used to designate a plat of ground in a city or village dedicated to the use of the general public for a market place, a common or a park. In some places the "plaza" is an uninclosed market place and common, over which the public may drive and ride and vend the products of the farm; in other places it consists of an inclosed park, filled with trees, flowers, walks, etc., around which is a driveway, and into which the public have free access; while in other places it consists of an open square, in the center of which is a small inclosed park with a fountain, flowers,

seats and walks. With the definition contained in the Standard Dictionary, the one quoted by appellant, is a pictorial illustration showing a large open square, in the center of which appears a small inclosed park with fountain and shrubbery.

We are led to the conclusion, therefore, that where the owner of a square or plat of ground situated in a city or village dedicates it to the use of the public and calls it a " plaza," but does not in any manner designate how it shall be enjoyed, that the city or village authorities may assume control of it and maintain it either as an open market place and common, an inclosed park for the pleasure and recreation of the public, or partly inclosed and partly uninclosed. In such a case they would be allowed a discretion in determining the manner of its enjoyment by the public.

In this case, however, we think there was manifested an intent on the part of the donors, Fell and Badeau, that precludes the right of appellees to fence up the entire triangular strip and make a park of it. That intent is gathered from their action in platting into lots the strip next to the railroad.

As all of those lots abut upon the railroad right of way, the inside ones, fifteen in number, would have no way of approach except from the triangular strip. It is unreasonable to suppose that they would plat a town with lots which would have no way of approach. While we must presume that when they platted the town, and set out this strip and called it " plaza," they contemplated any of the uses falling within the full meaning of that term, they did not intend such a use of it as would shut off reasonable ingress and egress to and from the lots. The decree of the Circuit Court properly, as we think, allows appellees in assuming control of the " plaza " to inclose and make a park of the entire piece except what is shown by the evidence to be reasonably necessary as a way of approach to the lots. We hold, therefore, that neither the errors nor cross-errors on this branch of the case are well founded.

Our attention is called to the testimony of Peter Folsom,

the surveyor who surveyed the town for Fell and Badeau when it was platted, that he intended the "plaza" to be open. We are not inclined to place such force in this testimony as a support of appellant's contention that the donors intended the entire "plaza" should remain uninclosed. It relates to a conversation had over forty years before, and it is evident from Folsom's own statement that he does not have a clear recollection of what was said by Fell. The conversation was had with only one of the donors, and if he did say that he intended the place should remain open for the public, that would not be inconsistent with the idea that appellees might fence a part of it. It could be fenced and still open to the public, and the evidence shows that appellees were not taking steps to deprive the public from its use and enjoyment, but were taking steps to beautify it and render it more enjoyable to the public. The construction sought to be placed on that statement of Fell is that it should remain ever entirely uninclosed, a construction which does violence to the intent manifested by the written and recorded plat made by the two donors.

We are not disposed to modify the decree so far as it relates to the matter of costs. That rested within the discretion of the court and the discretion has not been abused. Decree affirmed.