[L. A. No. 1857. In Bank.—October 11, 1906.]

## J. H. SPIRES, Respondent, v. CITY OF LOS ANGELES et al., Appellants.

PUBLIC PARK—USE FOR PUBLIC LIBRARY—ADMINISTRATION PURPOSES—
   INJUNCTION.—The erection of a building for a public library in a public park, with rooms therein as a meeting-place for the board of library directors of the city, is a legitimate use of a portion of the park which cannot be enjoined at suit of an abutting owner and taxpayer; but the use of the library building for administration purposes, such as for rooms for the board of education, or for any other municipal body, may be enjoined.

APPEAL from a judgment of the Superior Court of the County of Los Angeles. D. K. Trask, Judge.

The facts are stated in the opinion of the court.

W. B. Mathews, and Herbert J. Goudge, for Appellants.

Charles Wellborn, C. E. Woodside, Eugene Overton, H. T. Lee, and H. W. O'Melveny, for Respondent.

LORIGAN, J.—The plaintiff, a resident and taxpayer of the city of Los Angeles, and the owner of certain property abutting on what is claimed to be a public park in said city, brought this suit in injunction against the city of Los Angeles, the mayor and common council, the members

of the board of library directors, and the members of the board of park commissioners of that city, to restrain them from erecting a public library on a tract of land owned by said city of Los Angeles bounded by Fifth, Hill, Sixth, and Olive streets in that city, and known as Central Park, on the ground that the city, as owner of said property, had dedicated it to the use of the public for park purposes, and that such purpose would not permit erection therein of a public library building.

The Central Park in question is six hundred by three hundred and thirty feet in size, and it was proposed by the municipal authorities to use a space in the center thereof, one hundred by one hundred and fifty feet, upon which to erect a public library.

The trial court found that the land in question had been set apart and dedicated by the city authorities of Los Angeles for the use of the public as a public park, and that its official name was "Central Park," and that ever since December 11, 1866, it had been maintained and used by the people of the city of Los Angeles exclusively as a park.

Judgment was rendered for the plaintiff in accordance with the prayer of the complaint, and the defendants appeal to this court therefrom.

The appeal is from the judgment, accompanied by a bill of exceptions.

The sole points presented on this appeal are whether,—1. The block in question was ever dedicated by the city of Los Angeles as a public park; or 2. If it was so dedicated, would the erection therein of a public library be foreign to the purposes for which said tract was dedicated, inconsistent with its use by the public, and an invasion of public right.

Much of the evidence in the case was addressed to the first proposition, whether there was in fact a dedication by the city of the block as a public park; but in view of the conclusion we have reached on the second point, we do not deem it necessary to pass upon that question.

If it be conceded that there was a dedication of the square as "a public place forever for the enjoyment of the community in general," as the principal ordinance on which reliance is based as showing dedication declares, still we think that the erection therein of a public library for the use of the same public who

are entitled to use the park is not only not inconsistent with the purposes for which the park was dedicated, but is really in aid and furtherance of its enjoyment by the public.

It is to be remembered that the dedication here is not one made by a private individual for a specific public use, where the rule of strict construction of the terms of the grant is to be applied. The land which it is claimed here was dedicated as a public park was land acquired by the city as successor to the pueblo of Los Angeles, to which it had been granted by the government of Spain. The city of Los Angeles, when the alleged dedication was made, was the owner in fee, and its dedication was for a general public use,—namely, "as a public place forever for the enjoyment of the community in general." This was comprehensive language, and in construing the grant, or rather the extent of the terms of the dedication, no narrow and strict construction should be applied to limit the city in the uses to which the property dedicated may be devoted, as long as they are such as tend to further and promote the enjoyment of the people under the general dedication of the land for their benefit. And that the establishment of a public library, to which the visitors to the park have access, is consistent with such public enjoyment, and tends to enlarge it, we have no doubt.

As matter of public knowledge, we are aware that the erection of hotels, restaurants, museums, art-galleries, zoological and botanical gardens, conservatories, and the like in public parks is common, and we are not pointed to any authority where it has been regarded as a diversion of the legitimate uses of the park to establish them, but, on the contrary, their establishment has been generally recognized as ancillary to the complete enjoyment by the public of the property set apart for their benefit. To instance, in Central Park in New York City there is a museum of natural history and a metropolitan art museum; and in Golden Gate Park in San Francisco, a museum, children's playground, and buildings used in connection with it, and a conservatory. We mention simply these parks and particular features devoted to the public enjoyment, although many other parks might be mentioned where similar buildings have been erected.

Now, we are at a loss to perceive why, if the erection of museums, conservatories, and art galleries is sustained as in

aid of the enjoyment of property dedicated to the public, the erection of a public library on a public park should be proscribed. Certainly the latter is as much in aid of the enjoyment of the public as the former, and, as far as the right of public access to it is concerned, stands on entirely the same footing. Of course, if a municipality were undertaking to establish on this property a city hall, fire-engine station, hospital, or jail; endeavoring to devote the property (assuming it was dedicated for a public park) to the erection of municipal buildings or offices or structures for use in the transaction of municipal business, a different question would be presented, and there would be little hesitancy in holding that it could not do so. But using a portion of said dedicated property for a museum or art-gallery or conservatory or library, designed for the recreation, pleasure, and enjoyment of the community in general, is an entirely different proposition, and is a distinction generally recognized by the authorities. Public buildings such as we have last mentioned are for the benefit of the same public that enjoys the advantages of the park; there is nothing exclusive about it, and they are in fact erected and maintained as additional and ancillary means to promote the recreation and pleasure of those to whom the enjoyment of the park is devoted.

And that among the buildings which may be erected within a public park in aid of and for the better enjoyment of the public, a public library is included, is settled by authority.

An interesting and leading case upon the subject is the *Attorney-General* v. *Corporation of Sunderland,* 2 Ch. Div. 634. This case directly involved the right of a municipality to erect a public library in a public park. A tract of land was purchased by the borough of Sunderland as an extension to an existing park, and was conveyed to it by a deed which declared that the land was to be used ''only for public walks and pleasure-grounds.'' Subsequently the corporation resolved to employ a quarter of an acre as a site for the erection of town buildings, including accommodations for a museum and a library and public offices. Thereupon suit was brought by the attorney-general at the relation of certain inhabitants and ratepayers of Sunderland to have the corporation restrained from appropriating any portion of the park ''as sites or a site for the erection of any town buildings or for any

erection or building which is not needed, or incidental to, the maintenance of the park as public walks or pleasure-grounds.'' The vice-chancellor before whom the case was first argued held that the municipal corporation defendant had power to erect upon the land in question a museum and conservatory, but not any municipal building or a library or school of art, and pursuant to this decision a decree was made restraining the corporation from erecting any town buildings or any building other than a museum or conservatory. The corporation appealed from this decree, and the court of appeals modified it by directing that the injunction should not ''extend to a free public library, museum or conservatory open for the use, convenience and recreation of the persons frequenting such walks and pleasure-grounds.'' In reaching this conclusion opinions were expressed by the justices of the court, James, L. J., after agreeing with the vice-chancellor that the corporation had no authority to use any land of the park as the site of a town hall, saying with reference to the erection of the other buildings involved: ''The original park was appropriated as 'a place of recreation,' and, according to the act under which the land now in question was acquired, it must be used 'as public walks or pleasure-grounds.' These words are not to be construed too narrowly. It is admitted by the information that some buildings are allowable, and the prayer is, as it seems to me, quite correct. The corporation is in the position of a trustee, and the question is whether in building a museum and library it is improperly executing a trust. The primary object of the trust is to provide a place of enjoyment and recreation; nothing is improper which conduces to that object, and we ought not to quarrel with anything which the corporation, in a reasonable exercise of their discretion, consider conducive to it. It is admitted that the erection of a conservatory is allowable, and it is an erection which you would expect, as a matter of course, to find in first-rate pleasure-grounds. The erection of a free museum containing botanical specimens and other curiosities appears also to be unobjectionable. A library into which people may turn if the weather becomes unfavorable also seems allowable if *bona fide* intended for the use of persons frequenting the grounds, as it will tend to promote the convenient use of the grounds. I think, therefore, that the exception in the order ought to be extended, so that the erection of a free

library may not be prohibited.'' Justice Melish, concurring, said: "I am of opinion, therefore, that no part of it can be used as the site of a town hall and offices. Can, then, any part of it be applied as a site for a museum, library, and conservatory? If the corporations were to acquire land for those purposes only, I think that such a purchase would not be within the act; but public walks and pleasure-grounds having been laid out on a piece of land containing twenty-five acres, it is proposed to apply a quarter of an acre for the erection of those buildings. The question, then, arises whether this application of a small portion of the ground is not reasonably incidental to the main object, and whether it will not improve the grounds in their character of public walks and pleasure-grounds. I am of opinion that it will, for it will increase the enjoyment of persons who go to walk there, and may induce more persons to frequent the grounds. I think that we ought not to put a narrow and strict construction upon the words, but that we ought to see whether the trustees, in what they are proposing to do, are *bona fide* carrying out the object of the trust.'' And Justice Baggallay expressed himself to the same effect: "The purposes of the section are that the land should be used for public walks and pleasure-grounds, and I should much regret to be obliged to hold that applying a small portion of it for a museum, library, and conservatory, was inconsistent with this purpose. I cannot conceive anything more likely to conduce to the enjoyment of the walks and pleasure-grounds than the having these erections attached to them, and I agree with the lord justices that the order should be varied to the extent mentioned.''

It is insisted, however, by respondent that if this rule, supported by universal custom, and announced in the case just cited, obtains, it can only apply when but a small portion of a public part is taken, and not when the site to be used is so large as to result practically in the destruction of the park as a pleasure-ground for the recreation and enjoyment of the public. This argument concedes the general right of the municipality to take a part of the park for buildings erected in aid of the enjoyment of the park by the public, and only insists that it has its limitations.

But conceding the limitation, we have nothing to do with its application here. It is not apparent that the erection of this

library will tend to the destruction of the park at all; the site for a library is relatively but a small portion of it, and, as we have seen, the erection of such a building therein is in aid of the public enjoyment of the entire park. Aside from this, however, no issue on this point was made in the court below, the contention of plaintiff there being that, as the park in question was dedicated to the use of the public as a pleasure ground, the city had no authority whatever to devote a portion of it, large or small, to a public library. No point was made as to any limitation on the right of a city by reason of the size of a site proposed to be taken in a public park for a library, but the right to do so was denied under any circumstances.

There is nothing further to be said in this matter. Under the view we entertain on the subject, the city of Los Angeles has a right, notwithstanding it be conceded that Central Park was dedicated for the benefit and enjoyment of the public, to build a public library on it, and the court was in error in granting a decree to plaintiff enjoining it and its officers from doing so. This view, of course, necessitates a reversal of the judgment. While the municipality has the right to establish upon the public park a public library it cannot devote any of the rooms therein to administration purposes. It appears from the evidence set forth in the bill of exceptions accompanying this appeal that it is the purpose of the city to provide rooms therein as a meeting-place for the board of library directors of such city, and that application has been made to such board of directors to provide rooms therein for the board of education. As far as the board of directors is concerned, this would seem permissible on account of their control of the library. But as to the board of education this cannot be done. The library building can be used for strictly library purposes only, and cannot be devoted to the establishment of municipal offices therein or used for municipal administration purposes other than as indicated relative to the board of library directors.

If any part of such building could be used for one administration purpose, it might gradually be devoted to another. If one municipal board or municipal officer of the city having no direct relation to the library can be located therein, so may another, and so the building which the city has a right

to erect as a library building solely in aid of the public enjoyment of the park may be gradually invaded for administration purposes and ultimately devoted to those purposes.

Upon a new trial it shall be the duty of the trial court under the views we have suggested to ascertain whether the city of Los Angeles proposes to use the library to be erected for any municipal purpose at all, except as to a meeting-room for said board of library directors, and if so to enjoin such use; the right of the city to erect the proposed library on the public park to be limited to its use solely for public library purposes. The judgment is reversed and the cause remanded for a new trial.

The appellant is entitled to costs on appeal.

Shaw, J., Angellotti, J., Sloss, J., McFarland, J., Beatty, C. J., and Henshaw, J., concurred.