[Civ. No. 1411.   Second Appellate District.—November 18, 1913.]

MARTHA E. MULVEY, et al., Appellants, v. JULIUS
   WANGENHEIM, as Park Commissioner of the City of
   San Diego et al., Respondents.

PUBLIC PARK — EXTENSION OF STREET ACROSS — RIGHT OF ABUTTING
   OWNERS ·TO INJUNCTION.—Where land has been dedicated solely for
   purposes of a public park, the extension of a public street across
   it constitutes a diversion of the land from the uses to which it has
   been dedicated, and is in violation of the trusts upon which it is
   held, and may ·be enjoined at the instance of an abutting owner
   whose ·property will thereby be damaged.

ID.—GRANT FOR SPECIFIC PURPOSE — DIVERSION TO DIFFERENT USE.—
   Where a grant is made for a specified, limited, and definite purpose,
   the subject of the grant cannot be used for another and a different
   purpose.

APPEAL from a judgment of the Superior Court of San
Diego County.   T. L. Lewis, Judge.

The facts are stated in the opinion of the court.

Ward, Wells & Ward, and Crouch & Harris, for Appel-
lants.

W. R. Andrews, and A. H. Sweet, for Respondents.

CONREY, P. J.—Judgment of dismissal in this case was
entered following an order sustaining demurrers to the
amended complaint.   Plaintiffs appeal from the judgment.

The object of the action is to obtain an injunction to
prevent the construction and grading of a street through
Balboa Park, a public park in the city of San Diego.   The
complaint states facts showing the existence of the park, and
that the land across which the proposed street is to be estab-
lished is a portion of the park; that part of the land in ques-
tion is included in pueblo lots belonging to the city, which
lots have been by certain legislative acts of the city and of
the state duly declared to be dedicated, set apart, and held
in trust forever by the municipal authorities for use and pur-
poses of a free and public park and for no other or differ-
ent purpose; that the remainder of the land in question

is held by the city under a deed whereby the grantor sold and conveyed the same for the purpose and upon the condition that it be dedicated to and forever remain a part of the public park of the city and for no other purposes whatever.

The defendants are certain persons constituting the board of park commissioners of the city, and certain individual defendants. The following facts appear from the complaint, which for the purposes of this record must be assumed to be true as stated: There is a park drive along the west line of the park extending southerly to a point some distance north of the point where, for a short distance, plaintiffs' property abuts upon the said westerly line of the park, and thence bears away from the west line and extends in a southeasterly direction through the park to the south line thereof. Sixth Street in the city of San Diego runs in a north and south direction and the northerly portion thereof extends to the southwest corner of the park, and is a public street existing for general street uses. In January, 1912, the defendants, other than the members of said park commisssion, petitioned the board of park commissioners for permission to open and improve a street along the west side of Balboa Park from the south line of the park northerly to said park drive, so as to connect Sixth Street on the south and said park drive on the north, said petitioners agreeing to pay the cost thereof. That petition having been granted by the board of park commissioners, the said individual defendants entered into a contract with the defendant Goodbody to do the work of opening said street, and he commenced the performance of said contract in accordance with plans and specifications which had been submitted with said petition and approved by the board of park commissioners in connection with its action in granting said petition. It is alleged that "said street is not to be built or constructed for park purposes or for the accommodation or use of the lands dedicated as aforesaid for a public park, and is not needed or necessary or convenient for park purposes, or for the use of said lands, but that the same is to be built and constructed for commercial purposes, to wit: to enhance the value of property on Sixth Street south of the south line of said park belonging to said defendants and others. Said street is to be constructed in order to continue Sixth Street in a

straight and direct line northerly from the south line of said public park to a connection with said park boulevard at Juniper Street, and thence northerly to the north line of said public park, thereby to construct and establish a public street and highway as a continuation of Sixth Street through said Balboa Park in order to make Sixth Street accessible to the northerly portion of said city, and thereby to divert business to Sixth Street and enhance the value of property thereon. That such use of said public park is a violation of the trusts upon which the title is held.''

The lots belonging to plaintiffs and fronting for a distance of one hundred and fifty feet along the west line of the park as aforesaid are improved, having thereon a dwelling-house and a barn, which are situate immediately next the east line of their property and adjacent to the west line of the park. Said premises are otherwise improved for residence purposes and have been so occupied by the plaintiffs and their predecessors. Hawthorn Street adjoins the property of plaintiffs on the south and extends from the west line of the park in a westerly direction. Ivy Street lies a short distance north of the property of plaintiffs and extends from the west line of the park in a westerly direction.

The natural surface of the ground as now existing in the western portion of the park adjacent to said streets and property is approximately at the same elevation as said property of plaintiffs and as the existing official and actual grade of said Hawthorn and Ivy streets. The construction of said proposed street, according to said plans and specifications, will make a cut below the official grade of Hawthorn Street of about thirteen feet, and below the official grade of Ivy Street of about six and one-half feet, and will prevent ingress and egress to said park from both of said streets, as well as to and from plaintiffs' property; and will make a cut of from eleven feet to seven and one-half feet along the east line of plaintiffs' property, ''thereby removing the lateral and subjacent support of plaintiffs' land and forming a perpendicular declivity and wall from the plaintiffs' east line down to the surface of said street, thereby injuring and damaging plaintiffs' property; . . . the soil along the east line of plaintiffs' property and where said cut is proposed to be made is of such a nature that it will fall of its own weight

into the excavation made for said street and will by the winter rains and storms be washed down therein, when the lateral and subjacent support shall have been removed therefrom, to the injury and damage of plaintiffs' property.'' Upon the removal of its natural support in the construction of said street the plaintiffs' property will not support the improvements located thereon, and the drainage from plaintiffs' property will be so increased that additional care and irrigation thereof will be required. Said plans and specifications for the construction of said street do not provide for the construction of a retaining wall along the east side of plaintiffs' property, or for holding the soil of plaintiffs' property in place after the removal of said lateral and subjacent support, and make no provision for strengthening the foundations of plaintiffs' buildings or otherwise; and said contract does not provide for any such retaining wall or for any support to hold plaintiffs' land and soil in place, or for strengthening the foundations or otherwise holding the plaintiffs' buildings in place upon the removal of said lateral and subjacent support from plaintiffs' land; and the defendants have not provided for and do not intend to construct any retaining wall or provide any means for said purposes of support. The plaintiffs purchased said property with respect to its location abutting upon said portion of said park and in reliance upon the uses and trusts upon which the title to said park lands is held. No compensation has been provided to be paid to plaintiffs on account of the damage which they claim that they will suffer by the opening and construction of said street.

Upon the facts herein stated we are of the opinion that the acts complained of constitute a diversion of a portion of the park property from the uses to which it has been dedicated, and will be in violation of the trusts upon which said property is held by the city. It is well established that where a grant is made for a specified, limited, and definite purpose, the subject of the grant cannot be used for another and a different purpose. (*Price* v. *Thompson,* 48 Mo. 361; *Village of Riverside* v. *MacLean,* 210 Ill. 308, [102 Am. St. Rep. 164, 66 L. R. A. 288, 71 N. E. 408] ; *Seward v. City of Orange,* 59 N. J. L. 331, [35 Atl. 799].) In *Village of*

*Riverside* v. *McLean, supra,* the court said: "It is not altogether clear that the roadway, if extended . . . across this park, will be a pleasure driveway. . . . There is nothing to show that West Avenue, if extended across this park, would be restricted, in the use to be made of it, to a mere pleasure driveway." And it was held that as the premises were originally dedicated for the purposes of a park, and not for the purposes of a traveled roadway, they could not be diverted to such street purposes. In *Seward* v. *City of Orange,* 59 N. J. L. 331, [35 Atl. 799], the same rule was enforced, the court saying that such a traveled way as there described was not for the use of the park as a park; that on the contrary, it diverts a portion of the park to a wholly different use and a use to which it was not donated.

In the cases above cited the parks were small and the proposed streets affected a much larger proportion of the park area than in the present case; otherwise the cases are parallel, and we see no reason why the same principle should not be applied here.

In this state an important case bearing upon the subject is *Spires* v. *City of Los Angeles,* 150 Cal. 64, [11 Ann. Cas. 465, 87 Pac. 1026]. There the city owned pueblo land and dedicated it "as a public place forever for the enjoyment of the community in general." Under this dedication, the property having been for a long time in use as a public square or park, it was proposed to construct in the center thereof a public library building. The supreme court held that the establishment of such public library, to which visitors to the park have access, is consistent with the public enjoyment of the park and the construction of the building was permissible. But it was also held that the building must be constructed for strictly library purposes, and that no part of it could be devoted to the establishment of municipal offices therein, or for municipal administration purposes, other than as a meeting place for the board of library directors.

The application to this case of the rule above stated does not in any degreee interfere with or deny the full extent of the powers of the board of park commissioners to use the discretion vested in them in the management and control of Balboa Park. For all purposes of administration of the park

property, that board has the right to make or change the improvements appropriate to the park and to determine upon the expediency or necessity of measures relating to the administration thereof. We simply hold that upon the facts, which must be considered as admitted for the purposes of this decision, the proposed work is essentially outside of the scope of any measure of administration of the park, and its execution would constitute fraud in the sense that it would be a violation of a trust.

Plaintiffs further contend that the construction of said street, under the circumstances and in the manner proposed, will be in violation of the provisions of section 14 of article I of the constitution of the state of California, which prohibits the taking or damaging of private property for public use without just compensation having been first made to or paid into court for the owner. Counsel for respondents reply that with respect to the properties described in the complaint, the plaintiffs and the city of San Diego occupy the relation of coterminous owners, and that the city through its board of park commissioners has the right, under section 832 of the Civil Code, "to make proper and usual excavations" on its land "for purposes of construction, on using ordinary care and skill, and taking reasonable precautions to sustain the land of the other." In view of the conclusions above stated on the other question here discussed, the rule ordinarily applying between coterminous owners is modified with respect to this case. Since the proposed work, when undertaken for the purposes and in the manner shown by the complaint in this action, will result in a damaging of the property of plaintiffs, and since such damage will be incidental to the use by the public of land adjoining the property of the plaintiffs and an application of such adjacent property to a public use not heretofore existing with respect thereto, it follows that the plaintiffs are not required to wait until the injury has been done and then rely upon their right to recover damages therefor. They are entitled to anticipate the impending loss and injury and to have the same prevented by an appropriate order of injunction. (*Schaufele* v. *Doyle*, 86 Cal. 107, [24 Pac. 834]; *Geurkink* v. *City of Petaluma*, 112 Cal. 306, [44 Pac. 570]; *Sievers* v.

23 Cal. App.—18

*Root,* 10 Cal. App. 337, [101 Pac. 925]; *Wilcox* v. *Engebretsen,* 160 Cal. 298, [116 Pac. 750].)

The judgment appealed from is reversed.

James, **J.,** and Shaw, J., concurred.