[S. F. No. 10805. In Bank.—October 16, 1923.]

## T. L. KELLY, Appellant, v. TOWN OF HAYWARD (a Municipal Corporation), et al., Respondents.

[1] DEDICATION — LANDS DEDICATED AS PLAZA — ERECTION OF TOWN HALL—INJUNCTION.—Where a block of land was dedicated to the public as a plaza and the same has ever since been and still is dedicated to the use and convenience of the public as a plaza, and the town in which the plaza is located has planted a large portion of the same to various ornamental trees, lawns, and flowers, the erection of a town hall with a jail upon a piece of land in the center of said plaza which has always been left unoccupied may be enjoined as an interference with the complete and common use and enjoyment of such space by the public, particularly that larger public not inhabitants of that particular community who are beneficiaries nevertheless of the trust resting upon the town authorities.

APPEAL from a judgment of the Superior Court of Alameda County. James G. Quinn, Judge. Reversed.

The facts are stated in the opinion of the court.

F. H. Arb for Appellant.

C. W. White, City Attorney, for Respondents.

THE COURT.—The plaintiff and appellant herein, a citizen and taxpayer of the town, brought this action to secure an injunction against the erection by the trustees of the Town of Hayward of a town hall, including room and offices for town officers, and a jail, for the sole use and benefit of said Town of Hayward, upon the "plaza" in said town. The defendants answered, admitting practically all the allegations of the complaint, and the parties thereafter entered into a stipulation of facts and submitted the cause to the superior court upon that stipulation and briefs. Judgment

Right to erect municipal buildings in dedicated park or square, notes, 11 Ann. Cas. 468; 21 Ann. Cas. 141.

What use of squares, parks or commons amounts to diversion from the use for which they were dedicated, notes, 18 A. L. R. 1246; 50 L. R. A. (N. S.) 465.

was entered for the defendants, findings being waived, and plaintiff appeals.

The stipulated facts in substance are as follows: Hayward is a municipal corporation of the sixth class, incorporated under the act of March 11, 1876 (Stats. 1875–76, p. 215). The town was formerly known as San Lorenzo and grew up on lands granted by the Mexican government to Guillermo Castro. By two maps, or town plats, filed by Castro in the years 1854 and 1856, respectively, and recorded in Book 17 of Maps of Alameda County, at pages 34 and 22 (a copy of the latter being kept in Castro's office, exhibited to prospective purchasers, and its block and lot numbers used in deeds of parcels sold), one block of land four hundred feet by three hundred feet in dimensions, and now bounded by Castro, Watkins, C, and D Streets, was designated by the word "plaza" and was thereby "dedicated to the public as a plaza and the same has been ever since and now is dedicated to the use and convenience of the public as a plaza."

It is also stipulated that the block comprises 2.75 acres of land which the town has heretofore planted to various ornamental trees, lawns, and flowers; that in the center of said lands there is an unoccupied piece which is about 22,500 square feet in area, whereon it is proposed by the defendants to erect and construct a town hall, the town never having had a town hall, which said building, when completed, will contain such necessary rooms and offices as may be required for town officers, and a jail, and that by so erecting said town hall in the center of said lands the beauty of said lands as now ornamented by trees, shrubbery, flowers, and lawns will in nowise be interfered with and the same will at all times have constant care and attention, and the same will at all times be kept open to the public for the pleasure and recreation of said public.

The only issue raised by the pleadings arises from plaintiff's allegation that the construction and erection of the proposed town hall would deprive the public and the plaintiff of the use of said lands as a plaza, and is therefore contrary to the use for which said lands were dedicated, and that irreparable injury would be done to the public and the plaintiff thereby; and the defendants' denial thereof, and their affirmative allegations that Castro, in using the word "plaza" for the purpose of making said dedication,

intended that the said block of land designated on said map should be used as a "public square and not as a park, and that as a public square the same would be used for a Town Hall and the remainder thereof to be used for growing of trees, shrubbery, flowers and lawns for the pleasure and recreation of the residents of the town of Hayward, . . . and that the use of the center portion of said land as a site for a Town Hall is not inconsistent with or contrary to the purposes for which said lands were dedicated and will not interfere with or in any way prevent plaintiff or the public of the right and convenience of using said lands and premises for any and all other purposes intended by Guillermo Castro at the time of the dedication of the same." As to this issue of consistency of proposed use with the purposes of dedication we are without aid from the stipulation of facts, which recites that Castro, in using the word "plaza," intended that the block should be used as a plaza.

It might be suggested at this point that it would seem that the intention of the dedicator and the terms of the dedication as interpreted by the predecessors of the present town authorities, by leaving this land unoccupied by any edifice for a period of forty-five years would be an almost conclusive argument upon the question of such intention; also that if the present board of trustees has discretion to utilize a portion of this block for town buildings, some future board might claim that under their discretion a corporation yard and rock-pile for the employment of prisoners, and other very useful adjuncts to the administration of the economic affairs of the town, might be located thereupon, until the entire space was fully so occupied.

It is stated in respondents' brief that it has been established by a decision of the United States federal court that the Town of Hayward "owns" the plaza, to be used by said town for the purposes intended by Castro when making the dedication.

The decision in the case referred to, *Grogan* v. *Town of Hayward,* 4 Fed. 161, written by Circuit Justice Field in 1880, contains a most interesting history of the organization of the town and the dedication of this plaza, which might well be added to the foregoing statement were we not constrained by a desire to be concise. It shows the action to have been instituted by a grantee of the purchaser at fore-

closure sale under mortgages executed by Castro subsequent to the dedication of this plaza and covering a tract which embraced the entire town site. This grantee maintained warehouses on a portion of the plaza from 1864 to 1877, when they burned down, whereupon the town took possession of the ground and Grogan brought suit to regain the same. Judge Field's conclusion was that the purchaser at the mortgage sale and his grantee took whatever rights they acquired in subordination to the interests of the public, represented, since the incorporation of the town, by its authorities.

Counsel agree that the purpose of the appeal is solely to secure a final determination of the questions of law involved and that these questions depend on the meaning of the word "plaza," which has never been judicially defined in this state. For our assistance, as set forth in their briefs, the definition of the word "plaza" found in the dictionaries is as follows: Webster's New International Dictionary: "Plaza." Spanish. A public square in a city or town; a market place; an open square; a fortified place or town. 30 Cyc. 1643: "Plaza." A word of Spanish derivation which in Spain, Cuba, Mexico, and parts of the United States settled by the early Spaniards, is used to designate a plat of ground in a city or village dedicated to the use of the general public for a market place, a common, or a park. (Plaintiff's Brief, p. 20.)

Appellant contends that it means a "park," and it is conceded that under that definition it may not be used as now intended, while respondents urge that it means a "public square" and as such may be utilized for governmental purposes, and counsel quotes cases from Illinois and Pennsylvania to support that view. The principal of these is *Commonwealth* v. *Connellsville Borough,* 201 Pa. St. 154 [50 Atl. 825], wherein it is stated: "The ordinary and most frequent uses [of public squares], as enumerated by Justice Rodgers in *Rung* v. *Shoneberger,* 2 Watts (Pa.), 23 [26 Am. Dec. 95], are as 'sites for the erection of buildings for the use of the public such as courthouses, market-houses, schoolhouses and churches; sometimes they are designed as ornaments and at others for the promotion of the health of the inhabitants by admitting free circulation of air.' To these might be added, especially in the earlier dedications,

commons for pasture, public pounds for stray animals, even under some conditions, common dumping grounds, or as in the present case, common landing places for those using the river.''

On examination of that case and the other Pennsylvania cases cited in connection with it, they are shown to have been based either upon the language of the particular dedication or upon legislation or local customs, and a line of decisions starting with the early case of *Commonwealth* v. *Bowman*, 3 Pa. St. 202, where it is said: ''To allow the county reasonable accommodation for its courthouse and offices in the great square of the county town, is one of the usages of our state, which has acquired the consistence of law.''

In the Colorado case cited by respondents of *McIntyre* v. *Board of County Commrs., El Paso County*, 15 Colo. App. 78 [61 Pac. 237], the square upon which the county courthouse was sought to be erected, with another of the same dimensions, was recited in an ordinance transferring control from the city of Colorado Springs to the county of El Paso to have been reserved by the Colorado Springs Company in planning the town for public buildings, company buildings, and parks, without which, it is inferentially held, the erection of even city buildings could not have been permitted. The judgment for defendant on demurrer was reversed and the cause remanded because the buildings contemplated were county and not city buildings. The case, therefore, does not support the respondents' position.

In view of the reasoning set out in decisions to be hereafter cited, it does not seem to us important to distinguish between the definitions of ''plaza'' and ''public square.'' It seems fair to assume that had Castro realized that English-speaking lawyers and courts would be probing his intention in future times, he would have used ''public square'' as a term less troublesome to them. Undoubtedly, what he sought to do was to present such a plat as would appeal to purchasers as meeting the current conception of proper subdivision. With changing conceptions and advancing years the uses would doubtless be changed. But we must examine the question in the light of what was expressed, and done, and our knowledge that in the nature of things, property was being purchased in the expectation that those expressions

and acts showed the complete purpose of donor and donee. Let us then examine the cases which we think controlling.

The first is that of *Village of Princeville* v. *Auten et al.,* reported in 77 Ill., at page 325 et seq. That was an action very similar to this. A bill in equity was brought to enjoin the village trustees from placing the town hall on a "square" or "public square," which was found to have been dedicated by its then proprietors by the filing of a map of the town wherein the center block was left blank, only the dimensions being indicated, and the proprietors signed the appended certificate that the plat was correct and "that the streets and alleys are of the size set forth in the plat," while the deputy surveyor certified, among other things, to the dimensions in feet of the "public square." The proof showed that the board of directors of the town had recognized the blank square as public grounds and sold lots fronting on it for an enhanced price. Neither the plat nor any of the certificates accompanying it expressed any limitation or condition as to the future use of the block designated as a public square nor indicated in what manner the public might enjoy it, although there was testimony introduced to the effect that it was the intention of the board of directors that it should forever remain an open square as a "beauty, convenience and charm to a country village."

The Illinois supreme court stated: "In the absence of any custom or usage having the force of law, our conclusion is, the mere fact this block of ground was dedicated by the original proprietors of the town for a 'public square' does not of itself confer upon the village trustees authority to appropriate it, in whole or in part, as a site for buildings for corporate purposes, against the wishes of any citizen interested. The privilege could only exist by grant or by some act of the donor's equivalent to a grant." It therefore affirmed the decree granting the injunction.

In *Sachs* v. *Trustees of Towanda,* 79 Ill. App. 439, cited by appellant, a careful definition of the word "plaza" is attempted as follows: "In some places the 'plaza' is an uninclosed market place and common, over which the public may drive and ride and vend the products of the farm; in other places it consists of an inclosed park, filled with trees, flowers, walks, etc., around which is a driveway, and into which the public have free access; while in other places it

consists of an open square, in the center of which is a small inclosed park with a fountain, flowers, seats and walks."

From this the court concluded that "where the owner of a plat of ground situated in a city or village dedicates it to the use of the public and calls it a 'plaza' but does not in any manner designate how it shall be enjoyed, that the city or village authorities may assume control of it and maintain it either as an open market place and common, an inclosed park for the pleasure and recreation of the public, or partly inclosed and partly uninclosed. In such a case they would be allowed a discretion in determining the manner of its enjoyment by the public."

In the recent case of *Dunne* v. *County of Rock Island,* 273 Ill. 53 [112 N. E. 342], the supreme court of Illinois cited *Village of Princeville* v. *Auten, supra,* as authority for the doctrine that the words "public square" do not indicate a certain or definite use of the square, and certainly not the definite use of maintaining thereon a county jail.

The trend of judicial interpretation is further indicated in the case of *Church* v. *City of Portland,* 18 Or. 73 [6 L. R. A. 259, 22 Pac. 528], involving two blocks designated upon the city plat by the words "public square," which were recognized by the city as having been set apart and dedicated by the proprietors of the "Portland Claim" to the use of the public as a public square for the use of the inhabitants thereof and the public generally, as an open plaza, and the city had planted trees thereon and otherwise improved the same as and for a public park or open plaza; later, the city prepared plans and specifications for a building on a portion of one of the blocks to be used as a city hall with a basement so furnished and completed as to be used as a public jail. One of the citizens of the city sought an injunction and, on denial of relief, appealed. Chief Justice Thayer, of the supreme court of Oregon, in his decision, states: "The questions to be determined herein are: For what use were the blocks intended to be dedicated? And will the construction of the building which the common council of the city proposes to erect thereon be consistent with the purpose of the dedication? That the blocks were intended to remain open plazas, and be beautified and adorned by the hand of art, I do not think there can be any doubt. Spots of that character, especially in large cities, are highly

important. They afford healthful and pleasant resorts in the heated season, and are in fact the only places where a large class of the community are able to go and enjoy the blessings and comfort of shade and pure air; and any attempt on the part of public officials to appropriate them as a site for public buildings, in which to conduct the economic affairs of a city, under any pretext whatever, would, as I view it, be a cruel effort to subvert a humane scheme. . . . The building of a city hall, with a jail in the basement thereof, upon the said block, as the common council proposes to do in this case, would, in my judgment, be a use of it foreign to the purpose for which it was dedicated, and should not be permitted. . . . The blocks were indicated on the map as public squares; which implied, of course, that they were to be enjoyed as such by the public at large, and not be appropriated and used by the city in the management and conduct of its affairs. The use of them in the way proposed would necessarily exclude the public from the use of them, except for the transaction of city business; but that privilege can be enjoyed wherever the buildings may be located. The act of building the city hall in question would virtually be a purpresture. The city would be making that several to itself which ought to be common to many.''

For the purpose of the appended illustrative notes, we would also cite *Codman* v. *Crocker*, 203 Mass. 146 [25 L. R. A. (N. S.) 980, 89 N. E. 177].

Our own cases which most nearly conform to the proper interpretation to be placed upon such a dedication as is involved here are *McCullough* v. *Board*, 51 Cal. 418, denying the right of the board of supervisors of San Francisco to devote a portion of a public square to the purpose of erecting a schoolhouse thereon, and the case of *Spires* v. *City of Los Angeles*, 150 Cal. 64 [11 Ann. Cas. 465, 87 Pac. 1026], which involved the use of a portion of one of the public parks of Los Angeles, which park it was conceded had been dedicated as ''a public place forever for the enjoyment of the community in general,'' as the site of a public library. In a decision upholding the right to erect a library, this court drew the distinction very clearly between structures which would not interfere with the enjoyment of the public and those which were of a business character for the advancement of the interests of the municipal government and

would interfere with such right, and held that the library, if erected, might not be used for meetings of the board of education of the city.

[1] In the case under consideration it cannot be said that the erection of the town hall with a jail will not interfere with the complete and common use and enjoyment of this space by the public, particularly that larger public not inhabitants of that particular community who are beneficiaries nevertheless of the trust resting upon the town authorities. Respondents state that if this plaza may not be utilized for the town hall the taxpayers will be burdened with the expenses of acquiring other land as a site for a town hall; but should the Town of Hayward become a city, as it no doubt will, its need of parks and open spaces will become more and more apparent with increasing population, and the expense of then acquiring the same from private owners will be very much greater than the amount to-day involved in the purchase of a site, so that even utilitarian considerations would be in favor of granting the relief which plaintiff, on his own behalf and that of the public generally, is seeking.

For these reasons we conclude that the judgment should be reversed and the trial court directed to enter judgment for plaintiff as prayed in the complaint, and it is so ordered.

All the Justices concurred.