[Civ. No. 1615.   First Appellate District.—May 27, 1915.]

## O. S. CAULFIELD, Appellant, v. EDWARD BERWICK et al., as Trustees of the City of Pacific Grove (a Municipal Corporation), Respondents.

PUBLIC PARK—DEDICATION TO GENERAL USES—PRESUMPTION.—Where a plot of land is dedicated to general park purposes without any reservation as to the nature and extent of its uses as such a public park appearing either in the agreement between the parties interested in the dedication, or upon the recorded map of the subdivision of land within the confines of which the park is located, purchasers of lots subsequent to the recordation of said map, and buying theirs lots with express reference to it, have a right to assume that the park designated thereon was only limited, as to its use and enjoyment by the public, to those purposes to which public parks are usually and properly devoted.

ID.—CHILDREN'S PLAYGROUND—PROPER USE OF PARK.—The devotion of a reasonable portion of a public park to tennis courts, croquet grounds, and children's playgrounds, with suitable appliances for these forms of public amusement and recreation, comes strictly within the proper and legitimate uses for which public parks are created.

ID.—POSSIBLE ABUSE OF CONTEMPLATED USES—INSUFFICIENT GROUND FOR INJUNCTION.—An injunction will not lie at the instance of a tax-payer to restrain the board of trustees of a municipal corporation from placing and maintaining tennis courts, croquet grounds,

and children's playgrounds in a public park of a municipality, on the ground that the installation of such amusements might possibly lead to other more noisy and less decorous forms of public amusement which would disturb the quiet and shock the moral and prudential senses of those residing in the vicinity of the park, as it is to be presumed that municipal officials will perform their duty, and surround such contemplated uses with such suitable restrictions as will not only render such uses inoffensive, but will also safeguard them from undue extension and abuse.

APPEAL from a judgment of the Superior Court of Monterey County.    B. V. Sargent, Judge.

The facts are stated in the opinion of the court.

Treat, Hudson & Martin, and Daugherty & Lacey, for Appellant.

H. G. Jorgensen, and J. A. Bardin, for Respondents.

RICHARDS, J.—This is an action brought by the plaintiff as a resident and taxpayer of the city of Pacific Grove, to restrain the defendants, as the board of trustees of said city, from placing and maintaining tennis courts, croquet grounds, and children's playgrounds upon and in a certain public park therein known as "Caledonian Park." The facts of the case are practically undisputed, and are briefly as follows: Prior to the year 1875 David Jacks was the owner of a large tract of land embracing the area now within the boundaries of the city of Pacific Grove. An association known as the Pacific Grove Retreat Association had been formed, chiefly if not wholly within the membership of the Methodist Episcopal Church, for the purpose of procuring a tract of land for the use of the members of that and other religious organizations as a seaside resort or retreat, and as a place for holding camp meetings and other assemblages of a religious and educational order. An agreement was entered into between this association and David Jacks, by the terms of which the latter was to set apart one hundred acres of his said land for the foregoing purposes, which was to be subdivided into lots and sold at not less than five hundred dollars an acre, the profits of such sales to be divided equally between Jacks and the association. The full control of the moral and prudential affairs of the community thus to be created was to be placed in the

hands of the association. The agreement having thus been made in May, 1875, David Jacks proceeded to have the specified tract of land surveyed and subdivided into lots, blocks, and streets. In doing so certain irregular plots were found to result which it was apparently difficult to profitably or practically subdivide; and among these was this plot embracing 1.41 acres of land, which Jacks concluded to set apart as a public park, and to give to it the name of Caledonian Park. The map of the subdivision accordingly shows such dedication of this plot under that name. The evidence discloses that there was some discussion at the time between certain members of the association and David Jacks as to the extent of prudential control which the former should have over such park; but this is immaterial since no action of the association as such is shown and since it appears that the dedication of the plot to general park purposes was made with the consent of both parties to the agreement, and without any reservation as to the nature and extent of its uses as such public park appearing in the agreement or upon the face of the recorded map. The project was apparently successful. A large number of lots were sold within a few years, and a considerable town or city, known as Pacific Grove, arose. In the year 1880 David Jacks transferred his interest in the unsold portion of the entire tract to the Pacific Improvement Company with the express approval and consent of the association; and under this new ownership practically all of the remaining lots in the tract have been sold by their lot and block numbers and by reference to said map. In the year 1889 the city of Pacific Grove was incorporated as a municipal corporation of the sixth class and has since been such corporation. The defendants herein are its duly elected and acting board of trustees. The plaintiff is the owner of a lot adjacent to this park and fronting upon the street which surrounds it, and upon which lot he has for some years resided.

According to the averments of his complaint, the defendants, as such board of trustees of said city, are proposing "to construct within and upon said Caledonian Park tennis courts, croquet grounds and children's playgrounds, and to permit the public to carry on and conduct such games and amusements therein." The doing of this, he asserts, would destroy the quiet, peace, and enjoyment of himself and other residents adjacent to said park, and thus decrease the value of their

property, and also subvert the said park from the original purposes of its dedication. The defendants, while admitting their intended devotion of a portion of said park to the foregoing purposes, deny that any subversion thereof from its proper purposes and uses as a public park would result; and further deny that any detriment or damage would flow to the plaintiff from the appropriation of a portion of said park for such uses.

The trial court found in favor of the defendants and gave judgment accordingly, from which judgment the plaintiff appeals.

The first contention of the appellant, to the effect that at the time of the original setting aside of this particular plot for park purposes there was a definite limitation placed upon its devotion to the general and usual purposes to which public parks may be devoted, by virtue of the understanding and agreement of the parties to its dedication, is not borne out by the evidence in the case. The mere fact that between some member or members of the Pacific Grove Retreat Association and David Jacks there was some indefinite conversation on the subject, would not of itself work such a limitation. Nor would the further fact that the moral and prudential control of the area to be occupied by the proposed town, including the right to limit the purposes for which lots to be sold therein were to be used, was given over to the association, be held to work such limitation, at least in the absence of any showing that the proposed action of the board of trustees was being taken in opposition to the views and will of the association, or that the proposed uses to which a portion of this park area was to be devoted were, in their nature and ordinary exercise, improper uses. The showing in this case is to the contrary; and is to the effect that an earlier devotion of a similar plot or park within said city to like uses was undertaken by its board of trustees with the express approval of the association. It is to be noted also that the agreement by which the association was vested with prudential control of the entire area of the town was never recorded; and that upon the face of the recorded map of Pacific Grove the dedication of the plot of land in question to the general uses of a public park appears without any such suggested limitation. This being so, purchasers of lots in Pacific Grove subsequent to the recordation of said map, and buying their lots with

express reference to it, would have a right to assume that the parks designated thereon were only limited, as to their use and enjoyment by the public, to those purposes to which public parks are usually and properly devoted.

The real issue in the case is thus limited to the inquiry as to whether the installation of tennis courts, croquet grounds, and children's playgrounds within the confines of a public park is such a devotion of this area to improper uses as to call for the restraint of the courts. Upon this subject there is little room for argument and less need for the citation of authorities. The cases are abundant and uniform both in this and other states, holding that the devotion of a reasonable portion of a public park to tennis courts, croquet grounds, and children's playgrounds, with such suitable appliances for these forms of public amusement and recreation, comes strictly within the proper and legitimate uses for which public parks are created. (*Law* v. *San Francisco*, 144 Cal. 384, [77 Pac. 1014]; *Harter* v. *San Jose*, 141 Cal. 659, [75 Pac. 344]; *Spires* v. *Los Angeles*, 150 Cal. 64, [11 Ann. Cas. 465, 87 Pac. 1026].) The industry of counsel for the appellant has produced no case to the contrary; and he frankly concedes that the playing of croquet and tennis and the establishment of children's playgrounds are proper purposes for which public parks generally may be devoted. The main burden of the appellant's discontent would seem to consist in his apprehension lest these contemplated uses of this hitherto unused and apparently unimproved park area would lead to other more noisy and less decorous forms of public amusement, which would disturb the quiet and shock the moral and prudential senses of those residing in the vicinity of the park. This court, however, cannot assume that any of these consequences are at all likely to occur. The defendants herein are the legally constituted board of trustees of the municipality, selected by the votes of its electors from their own number to direct its affairs doubtless with a view to their known qualities of wisdom and discretion in the prudential management of their particular community. It is to be presumed that these officials will perform their duty, and will surround whatever proper uses they determine to make of a portion of the park areas of their city with such suitable restrictions as will not only render such uses inoffensive to the feelings of any of their fellow citizens, but will also safeguard them from undue extension and abuse.

27 Cal. App.—32

The appellant does not assail the discretion nor impugn the good faith of the respondents in their action thus far proposed to be taken, and his concessions in these respects, we think, concede his case out of court.

The judgment is affirmed.

Lennon, P. J., and Kerrigan, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 26, 1915, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 26, 1915.