[Civ. No. 8663. First Appellate District, Division Two.—December 28, 1932.]

LOS ANGELES ATHLETIC CLUB (a Corporation), Appellant, v. CITY OF LONG BEACH (a Municipal Corporation), Respondent.

Hunsaker & Cosgrove and John N. Cramer for Appellant.

Nowland M. Reid, City Attorney, Geo. W. Trammell, Assistant City Attorney, and Beach Vasey and John O. Palstine, Deputies City Attorney, for Respondent.

DOOLING, J., *pro tem.*—This is an appeal from a judgment of dismissal entered after the sustaining of a demurrer to plaintiff's first amended complaint. It appears from the amended complaint that plaintiff and appellant is the owner of a beach lot bordering on the Pacific Ocean within the territorial limits of the defendant and respondent, City of Long Beach, upon which lot appellant maintains a club building; that respondent has constructed upon the tide and submerged lands of the Pacific Ocean, approximately 1200 feet westerly of appellant's property, a crescent-shaped breakwater and within this breakwater a fill upon which it is planned to construct a municipal auditorium. It is further alleged that by reason of the construction of this breakwater and its interference with the normal and natural action of the waters of the Pacific Ocean the beach lands of appellant are being eroded and washed away and its club building is being undermined and endangered. Appellant prays that respondent be compelled to abate and remove this breakwater and fill, or in the alternative erect groynes, bulkheads, breakwaters or other works to adequately protect appellant's property.

It is appellant's theory as stated in its briefs that the construction of a municipal auditorium upon the tide and submerged lands of the Pacific Ocean is an unlawful use of such lands.

The City of Long Beach holds title to the tide and submerged lands in question under a statute enacted in 1925 (Stats. 1925, p. 235). By the terms of this statute "none of said lands shall be used or devoted to any purpose other than public park, parkway, highway, playground and the construction, maintenance and operation thereon of wharves, docks, piers, slips, quays and other utilities, structures and appliances necessary or convenient for the promotion of commerce and navigation".

It will be seen from this quoted language that the City of Long Beach has authority to use portions of these lands for public park, parkway, highway and playground purposes. This amounts to a legislative determination that portions of such tide and submerged lands may be used for such purposes without interfering with the paramount rights of navigation and fishery. If, in adapting the tidelands for use in fishing

and navigation, "it is found necessary or advisable, in aid of the use, to cut off portions of them from access to the waters of the harbor, that may be done". (*Muchenberger* v. *City of Santa Monica*, 206 Cal. 635, 641 [275 Pac. 803, 806].) We must take it in support of the official action of the state legislature in granting to the City of Long Beach the right to use portions of such tide and submerged lands for park, parkway, highway and playground purposes that it was found necessary or advisable by the legislature to cut off such portions from access to the waters of the harbor in aid of the paramount uses of navigation and fishery.

There is a disputable presumption declared by section 1963, subdivision 15, of the Code of Civil Procedure, "that official duty has been regularly performed". In the absence of evidence to the contrary this disputable presumption becomes controlling. Under this presumption, unless controverted, the courts are bound to assume that in constructing the crescent-shaped breakwater referred to in the complaint the officers of the City of Long Beach were proceeding under the authority granted them to use portions of the tide and submerged lands for park, highway, parkway and playground purposes. The amended complaint, as we construe it, does not allege facts sufficient to rebut this presumption. It is alleged in the amended complaint that the breakwater extends into the ocean at its farthest point about 1400 feet from the shore and that the fill for the municipal auditorium extends from the shore line only 690 feet, and from a diagram attached to the amended complaint it appears that the fill occupies only about one-fifth of the area inclosed by the breakwater. As to the purposes to which the area of approximately four-fifths of the tide and submerged lands inclosed within the breakwater and not covered by the fill are intended to be devoted the amended complaint is silent. If we assume, as we are bound to do in support of the action of the officers of the City of Long Beach, that this otherwise unoccupied area is to be devoted to park or playground purposes or both, then the use of the tide and submerged lands within the breakwater is entirely consistent with the authority granted to the City of Long Beach unless the construction of the municipal auditorium upon a portion of a park or playground is unlawful. Under the authority of such cases as *Spires* v. *City of Los Angeles,*

150 Cal. 64 [87 Pac. 1026, 11 Ann. Cas. 465], *Slavich* v. *Hamilton,* 201 Cal. 299 [257 Pac. 60], and *Vale* v. *City of San Bernardino,* 109 Cal. App. 102 [292 Pac. 689], we are satisfied that the construction upon a part of a public park or playground or both of a municipal auditorium for the use of the public is not inconsistent with its dedication to or use for park or playground purposes.

 Appellant points to the following allegation in its amended complaint as showing that the breakwater was constructed for a purpose at variance with the statutory authority of the City of Long Beach: "That said Horseshoe breakwater was constructed by the defendant for the purpose of affording protection to said auditorium fill against the wave action of the waters of the Pacific ocean at the place of its construction." While a complaint is to be liberally construed with a view to substantial justice between the parties (*Mix* v. *Yoakum,* 200 Cal. 681, 687 [254 Pac. 557]) it must still as against a demurrer state the facts necessary to establish a cause of action. It is to be observed of this quoted allegation that it neither alleges that the sole or only purpose of the construction of the breakwater was to protect the auditorium nor that the lands inclosed within and protected by the breakwater were not intended to be used for any of the purposes permitted by the statute. It is entirely consistent with this allegation that the primary purpose of the construction of the breakwater was the protection of the area within it for park or playground purposes, and that another and incidental purpose was the protection of the auditorium fill from the action of the waves. It seems to us that a complaint seeking to charge official misconduct, as this one does, should reasonably be required fairly to negative the presumption of the regularity of official action declared by the code.

However, the disposition of this question is not necessarily determinative of the rights of the parties. It is alleged in the amended complaint, in effect, that the breakwater interferes with the natural and normal action of the waters of the ocean in such manner as to cause such waters to erode the beach lands of appellant and undermine its clubhouse. It is appellant's position that this is a damage to its property of the character contemplated by section 14, article I, of the state Constitution, entitling it to relief.

It was settled shortly after the adoption of the Constitution of 1879 that a property owner whose property was proximately damaged by the construction of a public work was entitled to relief under the provisions of section 14, article I (*Reardon* v. *San Francisco,* 66 Cal. 492 [6 Pac. 317, 56 Am. Rep. 109]), and this rule has been reaffirmed as recently as *McCandless* v. *City of Los Angeles,* 214 Cal. 67 [4 Pac. (2d) 139]. A case closely in point is *Elliott* v. *County of Los Angeles,* 183 Cal. 472 [191 Pac. 899, 900]. In that case by the construction of a storm drain as a part of the works of a protection district waters were diverted on to plaintiff's land to her damage. The Supreme Court said: "The case, therefore, is one wherein property has been damaged by works constructed for public purposes, and no compensation has been provided or paid in advance as required by the Constitution. (Art. I, sec. 14.) In such cases the rule is well established that if the property is not condemned by legal proceedings and the damage paid in advance before the construction of the works, the county is liable for the damage resulting therefrom, and an action will lie against it for the recovery thereof." This case in principle is not distinguishable from the Elliott case.

■ However, by its amended complaint appellant seeks by mandatory injunction to abate the breakwater and fill which are alleged to have been already constructed. That these works are extensive and that the expense of their construction must have been considerable appears clearly from the amended complaint. It is alleged that said breakwater is constructed of piles with granite rocks placed between said piles and on either side thereof, varying from a width of 30 feet at its base at the points nearest the shore to a width of 120 feet at its base at the portions farthest from the shore, and in height from 8 feet to 38 feet. This massive and completed public improvement appellant seeks to have abated because of the damage to its property. Under such circumstances the rule of law well stated in *County of Los Angeles* v. *Rindge Co.,* 69 Cal. App. 72, 81 [230 Pac. 468[, would seem to be peculiarly applicable:

"Under the circumstances thus appearing, and the road as constructed having passed into actual public use, an injunction will not be granted to interfere with the enjoyment of that use. Where property has been dedicated to a

public use, the operation thereof is in the interest of the public, and should not be interrupted by an action to recover possession thereof or to enjoin the continuance of the use. An extensive review of the cases declaring this doctrine will be found in *Miller & Lux Inc.* v. *Enterprise Canal & Land Co.*, 169 Cal. 415 [147 Pac. 567]. In most of these cases the use was one which had become established by consent of the owner or by his passive acquiescence therein; but the rule as declared in these decisions is not based upon the doctrine of estoppel. It rests upon consideration of public policy 'under which the rights of the citizen are sometimes abridged in the interests of the public welfare'.''

This doctrine has been frequently announced in this state and many of the leading cases are cited and discussed in *Miller & Lux Inc.* v. *Enterprise Canal & Land Co., supra.* While it has frequently been placed upon the ground of estoppel it rests more strictly upon grounds of public policy that the property owner cannot stand by and see large sums of money spent upon a public improvement and then deprive the public of the benefit of the expenditure for the protection of a right which may be protected fully by an action for damages. (*Gurnsey* v. *Northern Calif. Power Co.,* 160 Cal. 699, 709 [117 Pac. 906, 36 L. R. A. (N. S.) 185]; *Miller & Lux Inc.* v. *Enterprise Canal & Land Co., supra; County of Los Angeles* v. *Rindge Co., supra.*)

According to the allegations of the amended complaint the breakwater was constructed in 1929; and this action was not commenced until July 24, 1930. Even if an estoppel must exist it appears from the face of the amended complaint itself that appellant stood by and did nothing during the entire course of construction and for over six months after the completion of the work sought to be abated. In the absence of pleaded facts legally excusing this inaction appellant's laches and conduct amounting to an estoppel appear upon the face of the amended complaint.

The alternative relief sought by the construction of additional works to protect appellant's property is beyond the recognized powers of equity and no authority is cited by appellant in support of that portion of its prayer.

Finally appellant claims that its amended complaint states facts entitling it to recover damages. A complete

answer to this is found in the failure to allege the presentation of a claim as required by section 338 of respondent's charter. (*Crescent Wharf & Warehouse Co.* v. *City of Los Angeles,* 207. Cal. 430 [278 Pac. 1028].)

The judgment appealed from is affirmed.

Sturtevant, J., and Nourse, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 27, 1933, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 23, 1933.