[Civ. No. 2517.   Fourth Appellate District.—April 15, 1940.]

MARY RITZMAN, Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation) et al., Respondents.

Jerrell Babb for Appellant.

Ray L. Chesebro, City Attorney, Leon Thomas David, Assistant City Attorney, C. C. Carleton and C. R. Montgomery for Respondents.

BARNARD, P. J.—This is an action to restrain the defendants from building a highway through that portion of the Arroyo Seco which lies within the limits of the city of Los Angeles and from deepening and widening the Arroyo Seco channel. An objection to the introduction of evidence was sustained on the ground that the complaint did not state a cause of action. The plaintiff, having declined to amend, has appealed from the judgment.

The complaint alleges that the Arroyo Seco is a natural storm drain meandering from the mountains north of Pasadena through a narrow basin to its terminal at the Los Angeles River; that the narrow basin through which it flows is a natural park and playground heavily wooded with native shrubs and trees; that formerly flood waters came through the Arroyo Seco at times causing damage to its natural beauty; that the Devil's Gate dam was built about 1918 for the purpose of flood control, which purpose has been accom-

plished and since then the Arroyo Seco is a meandering channel about 20 feet wide and three feet deep; and that, in keeping with plans made by the cities of Pasadena, South Pasadena and Los Angeles, the city of Los Angeles condemned park areas so as to give the city a continuous park in the Arroyo Seco, running from the south boundary of South Pasadena to the Los Angeles River, a distance of about four and a half miles and having an average width of about 300 feet.

It is then alleged that in these condemnation proceedings, brought under the Park and Playground Act of 1909, two assessment districts were formed, the cost of the land taken being assessed against the adjacent lands in the assessment districts; that the plaintiff owns land within one of these districts which was thus assessed; that about 70 per cent of the land taken was on the floor of the arroyo and 30 per cent was on the adjoining barren hills; that the city of Los Angeles has improved a portion of the land taken, this development consisting, in addition to local roadways, of tennis courts, bowling greens, playground apparatus, and places for numerous games, camp grounds and picnic grounds; that the principal users of these parks are people residing westerly thereof; and that said lands were acquired in trust for park purposes.

It is further alleged that the defendants jointly have surveyed, designed and commenced to build a "high speed highway" to be a state highway running through the westerly portion of these park lands for the entire distance of four and one-half miles, connecting at its southerly end with a street in downtown Los Angeles and at its northerly end with a street in South Pasadena; that this highway is designed to be 80 feet wide, having lanes separated by a 4-foot parking strip, and that it will be 12 feet below the surface of the adjacent ground, being made convenient for high speed traffic; that it is to be continuous for its entire distance without any adequate inlets or outlets and with no "practical" access from side streets within the assessment district; and that the highway is intended to connect downtown Los Angeles with the city of Pasadena and the horse-racing tracks at Santa Anita and for fast moving traffic. It is also alleged that the defendants are planning to change the Arroyo Seco channel by deepening it and by changing its course from a zigzag one to one approximately in the center of the park lands, and

that this change is unnecessary since the erection of the Devil's Gate dam, which has so far been adequate to control the flood waters. It is then alleged that these proposed improvements will destroy the usefulness of the park lands for park and playground purposes, and that the proposed use is inconsistent with the purpose to which the lands have been dedicated.

The question presented is whether the complaint alleges facts showing that this is such a diversion of the land from park purposes as may not legally be made by respondent city and its boards.

Section 172 of the charter of the city of Los Angeles authorizes the department of parks to manage and control the parks owned or operated by the city, to establish parks and to acquire by purchase, condemnation or gift any and all property necessary or convenient for such purposes. Section 176 provides that the board of park commissioners "shall have full control over all park sites and no such sites shall be devoted to any other purpose, in whole or in part, without permission from said Board". Section 178 reads in part: "All lands belonging to the city which have heretofore or which hereafter may be set apart or dedicated for the use of the public as a public park, shall forever remain to the use of the public inviolate; provided, however, that the Board of Park Commissioners . . . may authorize the opening, establishment and maintenance of streets or other public ways in or through such parks."

It cannot be seriously questioned that the contemplated straightening of the channel running through the Arroyo Seco, as alleged, is entirely consistent with the use of the land for park purposes and is a matter within the discretion of the board of park commissioners. It is alleged that floods in the past have caused damage to these park lands and while it is alleged that no damage has occurred since the construction of the Devil's Gate dam it is a matter of common knowledge that dams sometimes break, that they sometimes fill up and become less efficient in controlling floods, and that extraordinary storms sometimes occur. (See *Southern Pac. Co.* v. *City of Los Angeles,* 5 Cal. (2d) 545 [55 Pac. (2d) 847].) This entire matter is so largely within the discretion of the park commissioners that the complaint "should reasonably be required fairly to negative the presumption of the regularity of official action declared by the code".

(*Los Angeles Athletic Club* v. *Long Beach,* 128 Cal. App. 427 [17 Pac. (2d) 1061].)

■ Assuming that the building of a highway through this long narrow park would constitute a diversion of a portion of these lands to purposes inconsistent with their use as a park, the question is presented as to whether such diversion is within the power of the city and its boards. The city was authorized to take title in fee to these lands in the condemnation proceedings (sec. 1239 of the Code of Civil Procedure; *Crockett L. & C. Co.* v. *American T. B. Co.,* 211 Cal. 361 [295 Pac. 328]). The complaint does not allege that the city did not take title to these lands in fee and, on the other hand, it is affirmatively alleged that the city "holds the title to said park lands as trustee for the benefit of its inhabitants". For the present purposes it sufficiently appears that the city holds title to these lands in fee.

■ Generally speaking, where a private party conveys land to a city for a definite public purpose it cannot be diverted to another and different purpose, at least so long as the conditions of the grant are in force. (*Harter* v. *City of San Jose,* 141 Cal. 659 [75 Pac. 344].) The main reason for this rule is that in such a case the title remains in the original owner subject to the specified public use. (*Harter* v. *City of San Jose, supra.*) That a different rule applies where the city has acquired title in fee was pointed out in *Slavich* v. *Hamilton,* 201 Cal. 299 [257 Pac. 60], where the court said: "The uses to which park property may be devoted depend, to some extent, upon the manner of its acquisition, that is, whether dedicated by the donor, or purchased or condemned by the municipality. A different construction is placed upon dedications made by individuals from those made by the public. The former are construed strictly according to the terms of the grant, while in the latter cases a less strict construction is adopted."

The distinction with respect to the manner in which land is acquired for park purposes, that is, whether acquired in fee or by private donation, has not always been kept clear in the decisions in this state. In *Hull* v. *Fairchild etc. Co.,* 66 Cal. App. 615 [227 Pac. 649], the court said that where land is once dedicated for a particular purpose it is beyond the authority of a city or of the legislature to withdraw it therefrom. However, no attempt was there made to distinguish between the two methods of acquiring property for park uses

or to analyze the reasons for the rules under the respective methods of acquisition. In *Spires* v. *Los Angeles,* 150 Cal. 64 [87 Pac. 1026, 11 Ann. Cas. 465], where the land in question had been acquired in fee, it was stated in effect that lands dedicated to park purposes could not be used for a purpose inconsistent therewith, although it was held that the building there in question was appropriate for park purposes. Again no attempt was made to discuss the reasons for the rule. In *Mulvey* v. *Wangenheim,* 23 Cal. App. 268 [137 Pac. 1106], these matters were not distinguished, although a holding that a part of park lands could not be used for street purposes was based upon the ground that land granted for a specific purpose could not be used for another purpose. A part of the land there in question had been donated for park purposes. The case of *Olmstead* v. *San Diego,* 124 Cal. App. 14 [12 Pac. (2d) 22], has no bearing here. While the lands were owned in fee the charter had given the park board exclusive control thereof and the park board had refused to consent to a use of a portion of the land for road purposes.

The case of *Spinks* v. *City of Los Angeles,* 220 Cal. 366 [31 Pac. (2d) 193], involved the right or power of the city to extend a street through Westlake Park, the land having been owned in fee by the city and dedicated as a public park. The court referred to section 178 of the city charter and, after pointing out the distinction between cases where land has been donated for park purposes and cases where land owned in fee has been dedicated to such uses, said: ''Acting under authority of this charter, and through the action of its legislative body, the city is only dedicating its own property to a different public use than that to which it has been heretofore subjected.'' Upholding the right of a municipality to thus meet changing conditions, and the right of the city to use a portion of these park lands for such street purposes, a judgment restraining the construction of a street across the park was reversed. The rule thus applied is not only supported by principle and authority, but finds additional support in the fact that the Los Angeles city charter not only provides that such lands shall not be devoted to other purposes without permission of the park commissioners, but also provides that this board may authorize the opening and maintenance of streets or other public ways both in and through such parks: The phrase ''other public ways'' would

include a highway. (*City of Long Beach* v. *Payne,* 3 Cal. (2d) 184 [44 Pac. (2d) 305].)

The only material difference between the facts involved in the case of *Spinks* v. *City of Los Angeles, supra,* and those involved in the instant case is that here the land in question, although owned in fee, was acquired through condemnation proceedings with the cost of the land raised by assessments upon the property within certain assessment districts. The fact that the land was dedicated to a certain purpose in connection with the condemnation proceedings results in no different situation, so far as our present problem is concerned, than exists where land is otherwise by ordinance or legislative act dedicated to a certain use, which was the situation involved in the case of *Spinks* v. *City of Los Angeles, supra.* One assessed for improvements through the formation of an assessment district has no title or right in the improvements superior to that of the public in general. While such improvements are presumed to benefit, particularly, land within the assessment district they are for the benefit of the entire community. We know of no rules giving such an assessment payer a vested right in the improvements, providing that the improvements shall perpetually remain in the same form, or providing that they may not later be changed or even abandoned, in the public interest.

In the case of *Reichelderfer* v. *Quinn,* 287 U. S. 315 [53 Sup. Ct. 177, 77 L. Ed. 331, 83 A. L. R. 1429], which was cited with approval in *Spinks* v. *City of Los Angeles, supra,* park lands acquired in fee under an act of Congress, through condemnation proceedings and an assessment against the property in an assessment district, were by a later act of Congress directed to be used in part for another purpose. It was held in that case that since the government had acquired the fee to those lands it did not, by dedicating the lands to a park use, purport to deprive itself of the power to change that use and devote the land to another purpose. In this connection the court said: "For, if the enjoyment of a benefit thus derived from the public acts of government were a source of legal rights to have it perpetuated, the powers of government would be exhausted by their exercise." And further, "The case of a park is not unique, . . . It has often been decided that when lands are acquired by a govern-

mental body in fee and dedicated by statute to park purposes, it is within the legislative power to change the use, (citing cases) . . . The abutting owner cannot complain; the damage suffered by him 'though greater in degree than that of the rest of the public, is the same in kind'.'' With respect to the claim there made that one assessed for the cost of land to be used for park purposes was entitled to have that use continued the court said: ''The fact that lands, including those now owned by respondents, were assessed for benefits . . . leads to no different conclusion. . . . All that the statute says is that the lands acquired shall be perpetually dedicated as a park. . . and that benefits shall be assessed.'' It was then held that the benefits intended, which were to be assessed, were those existing in the absence of any guaranty that the park would be continued for any particular length of time; that the possibility that the government might later exercise its power to change the use of the land was a proper subject for consideration in valuing the benefits conferred; and that such assessments are an exercise of the taxing power which in no way differs from the assessment of benefits arising from other types of public improvement.

In our opinion, the principles enunciated in the two cases last cited, taken in connection with the sections of the Los Angeles city charter to which we have referred, are controlling here.

The respondent Highway Commission and highway officials ask for a clarification of the rule broadly stated in the case of *Spinks* v. *City of Los Angeles, supra,* to the effect that where land is donated by private individuals to a city for park purposes ''the city cannot legally divert the use of such property to purposes inconsistent with the terms of the grant''. It is argued that the reason for that general rule is that title in such a case is reserved in the grantor and the only right possessed by the city is the right to use the land for the specified purpose; that the limitation upon the city's right to change the use of such land is based upon lack of title in the city rather than upon lack of power; and that no legal reason exists why that part of the title reserved to or remaining in the grantor may not be acquired by condemnation proceedings just as any other right or title may be thus acquired. While there would seem to be considerable merit in this argument such an issue is not involved in this appeal

and anything we might say in that connection would serve no useful purpose.

The judgment appealed from is affirmed.

Marks, J., and Griffin, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 13, 1940.