[Civ. No. 15473.   Second Dist., Div. Three.   Mar. 27, 1947.]

VAN M. GRIFFITH, Appellant, v. CITY OF LOS ANGELES et al., Respondents.

Loren A. Butts for Appellant.

Ray L. Chesebro, City Attorney, Leon Thomas David and Bourke Jones, Assistant City Attorneys, Faries & McDowell, McIntyre Faries, C. E. McDowell and Allan M. Carson for Respondents.

James M. Carter, United States Attorney, Frank Wickhem, Special Assistant to the Attorney General, and Milton N. Sherman as Amici Curiae on behalf of Respondents.

SHINN, Acting P. J.—Plaintiff brought this action against the city of Los Angeles, the housing authority of the city, the department of parks, and the individuals who constitute the board of park commissioners of the city, for an injunc-

tion restraining the defendants from permitting the use of park property for housing purposes. An order to show cause why a preliminary injunction should not be granted was issued, defendants appeared by demurrer, a preliminary injunction was denied, demurrers were sustained with leave to amend, plaintiff declined to amend, and judgment of dismissal was thereupon entered. Plaintiff appeals.

The complaint alleged that on or about March 5, 1898, Griffith Jenkins Griffith and Mary Agnes Griffith gave and granted to the city certain lands particularly described in the complaint, having an area of some 3,800 acres, to be used as a public park and to be named Griffith Park. The grant was made upon condition that title would revert to the grantors or their heirs if the land should cease to be used as a park or if the name of the park should be changed. The city's housing project is not located upon this land and the conditions of the deed are not material to the present controversy. The complaint further alleged that on or about April 29, 1921, the city acquired by purchase from the estate of Griffith Jenkins Griffith another parcel of land comprising an area of approximately 350 acres "for the use of said city as a part of a plan for the development of Griffith Park." The second parcel was granted by the executor of the Griffith estate unconditionally and without covenant as to the uses to be made of it. The two parcels have since constituted Griffith Park. It was alleged that after acquiring the second parcel the city council, by resolution, set apart and dedicated the land for use as a public park and placed the same under the supervision and control of the department of parks, but that the defendants intend to and will, unless restrained, devote approximately 160 acres of said parcel to "a purely commercial, revenue-producing enterprise," which is referred to in the complaint as a "project," by dividing it into lots and blocks, erecting dwellings thereon equipped with public utility services and sewers, to be rented to families, and also to erect thereon buildings to be used for retail merchandising in supplying the needs of the tenants of said dwellings. It was alleged that the threatened actions of the city would be in violation of certain provisions of the city charter, and that said lands are not necessary for the establishment of the housing project, since there are other vacant and available lands more suitable and convenient for that purpose. It was alleged that at the time of the filing of the complaint defendants had

commenced construction work upon said project, and the prayer of the complaint was for injunction requiring the removal of the structures and forbidding the contemplated use of the land. It was not alleged whether buildings were to be maintained on the land temporarily or permanently, nor was it alleged that it was the purpose of the city to permanently abandon or discontinue the use of the land as park property. The case was presented to the trial court upon the theory that it is the plan of the city to permit the erection and use of dwellings only during the current housing emergency. In the memorandum opinion of the trial judge the use to which the land is to be devoted was regarded as a temporary one, and from the briefs on appeal it appears that no question of permanent use of the property for housing is involved. ▇ The complaint is to be construed most strongly against plaintiff (*Frace* v. *Long Beach etc. School Dist.*, 58 Cal.App.2d 566, 568 [137 P.2d 60] ; *Royal Ins. Co.* v. *Mazzei*, 50 Cal.App. 2d 549, 555 [123 P.2d 586]), and it must be presumed that if the plan of the city contemplated anything more than a temporary use of the land for housing purposes, it would have been so alleged in the complaint. In our decision we shall consider the use of the land to be of an emergency or temporary character, without intention or plan to make it permanent.

Briefs have been filed in support of the position of respondents by the United States of America and the Veterans' Advisory Committee to the housing authority of the city of Los Angeles, as well as by the housing authority and the city itself. The history of federal legislation on the subject of veterans' housing is reviewed and it is emphasized that the plans of the city of Los Angeles which are in question here are but supplementary of the broad national program. The other briefs filed by and on behalf of respondents review state legislation pertaining to emergency housing. The provisions of the charter upon which respondents rely for authority to use the land in question for temporary housing, and which appellant contends do not extend the claimed authority, are fully discussed in the briefs. The question to which the principal arguments are directed is whether the city, having acquired by purchase land for park purposes, and having designated it as such and placed it under the control of the park commission, may afterward devote it in whole or in part to other public uses. It is the position of the respondents that the charter provisions do not forbid the abandonment of the

use of land for park purposes so long as it is devoted to some other public use. But the arguments upon this point go far beyond the primary question, namely, whether the use of the land for temporary housing in the existing emergency is other than a legitimate use for park purposes. The trial judge in a memorandum opinion placed emphasis upon the fact that it has long been the custom and practice to make temporary use of park lands for the shelter and accommodation of citizens of the community who have been rendered homeless by public catastrophe. His conclusion was that emergency use of park land for temporary housing is a use for park purposes. We are in complete agreement with that conclusion.

Plaintiff concedes that the land may be used for all legitimate park purposes. His claim is that the use for temporary housing is not one of these. He could not state a cause of action for injunction except by alleging facts which would substantiate this claim. The presumption is in favor of the lawfulness of the actions which the city has taken. (Code of Civ. Proc., § 1963, subd. 15; *Los Angeles Athletic Club* v. *Long Beach*, 128 Cal.App. 427, 430 [17 P.2d 1061]; *Ritzman* v. *City of Los Angeles*, 38 Cal.App.2d 470, 473 [101 P.2d 541].) In order to overcome this presumption it was necessary for plaintiff to allege facts from which the invalidity of the actions would appear, as violations of charter provisions, general law, or established rights of the public to use the park solely for recreational purposes. The city charter does not specify the particular purposes for which park lands may be used. We are aware of no general law enumerating uses which are or those which are not proper ones to be made of park property. We must therefore look to common usage and custom to ascertain the uses to which parks may be, and commonly are put, without interfering with or destroying their character as park property. Plaintiff is asking the court to hold, upon the basis of facts which are of common knowledge, that the use of suitable park land for emergency temporary housing is not a customary, legitimate, and proper use. He has cited no precedent which supports his claim and we are satisfied that none may be found. Experience, reason and logic, and all decisions of courts of which we are advised are against his contention. San Francisco experienced a crisis when the homes of some 200,000 of her citizens were destroyed by action of the elements. Park lands were extensively used as sites for temporary housing structures. Photographs of

these districts, taken from the "San Francisco Relief Survey" by the Russell Sage Foundation (Los Angeles Public Library reference No. 361.51-S-195) are found in an appendix to the brief of the city. Seventeen camps were established in public squares or parks, in which more than 18,000 people were housed. Appellant says that what was done in San Francisco is of no significance for the reason that it does not appear that anyone questioned the right of the city to use the parks for emergency housing. This argument misses the point. The San Francisco experience gave rise to no legal precedent, but it proves that the citizens of San Francisco were willing to surrender the privilege of using the parks for recreation while they were needed for emergency housing. They recognized their duty to allow the parks to be used to the best advantage of the community. The sentiments which dictated their consent would be expected of any generous, public-minded, and right-thinking community. The city of Columbus recently allowed temporary veterans' housing in public parks although a taxpayer objected. (*City of Columbus* v. *Columbus Met. Housing Authority*, —— Ohio App. —— [68 N.E.2d 108].) ▇ The parks of a community belong to its people and there is no better evidence as to what is a proper use of park property in an emergency than is furnished by the uses to which it is devoted with the approval of the community.

▇ The people of the State of California have approved the use of park property in the manner in which a portion of Griffith Park is being used by the city. The Legislature on February 15, 1946 (Stats. Ex. Sess. 1946, ch. 29) passed an act providing for the acquisition of temporary emergency housing facilities for veterans and families of servicemen by joint action of the state and local agency, and appropriated $7,500,000 for that purpose, which amount was later increased by $2,500,000. It authorized local agencies, which included counties and cities, to cooperate with the housing authority, in accordance with the Housing Cooperation Law (Stats. Ex. Sess. 1938, ch. 2, p. 2, 2 Deering's Gen. Laws, Act 3484) for the purpose of carrying out the provisions of the act. At the second extra session, July, 1946, the act was amended by adding section 4.5, which authorizes cities, counties and other agencies to use park or recreation property for the purpose of erecting temporary and emergency housing facilities for veterans and families of servicemen, and the

leasing of such property to another public agency for such purpose, such uses being subject to the control and management of the park board, commission, or other authorized local authority. The act also confirmed, validated, and declared legally effective all acts theretofore taken for the use of public park or recreation property for such housing. It was passed as an emergency measure, with the following statement constituting the necessity therefor: ''Due to the extreme shortage in housing in this State it is imperative that temporary and emergency housing facilities for veterans be erected with the greatest of dispatch and as quickly as possible to alleviate the hardship and suffering now common in this State. Public park and recreation property of local agencies furnish one of the best and most accessible sites for such temporary and emergency housing facilities and many local agencies have either commenced to utilize such property or contemplate doing so within the immediate future. To eliminate all question concerning the power of such local agencies to so utilize such public park and recreation property it is necessary that their power to do so may be affirmatively stated by legislative enactment and it is therefore necessary that this act take effect immediately.''

Respondents cite these statutes, contending that they have the effect of validating the acts of the city in question, if for any reason they were invalid when done. They contend that the questions on the appeal have been rendered moot. We find it unnecessary to decide whether the legislation provided authority for the actions which have been taken by defendants, or effected a ratification of what had already been done. The city had general authority under the charter to use the land for all proper park purposes. The acts are, however, quite significant. They show the sentiment of the people of the state and are a declaration that the use of public parks for temporary veterans' housing is within the legitimate and proper purposes for which park lands may be used.

The question whether suitable park property could properly be used for temporary veterans' housing was considered in *Hyland* v. *City of Eugene* (1946), —— Ore. —— [173 P.2d 464]. In holding that the use was not improper, it was said: ''It is not unusual during public emergencies temporarily to use parks to relieve distress and suffering.'' The court cited *Hessin* v. *City of Manhattan*, 81 Kan. 153 [105 P. 44], in which the court upheld the temporary maintenance

of a pesthouse in a public park on the occasion of a threatened smallpox epidemic. We have found but few reported cases on the subject and none which supports the contentions of plaintiff. The scarcity of authority may be due to the fact that few citizens have raised objection to such meritorious use of park property. The great number of authorities cited in the briefs, which considered questions relating to permanent changes in the character of park property, are not in point.

Even if the case were one of first impression, we would be unable to find in it any ground or reason for the issuance of an injunction. The situation in Los Angeles does not differ from that of many other communities, except in degree, and is due to the war. Tens of thousands of returned veterans and their families, as well as countless others in Los Angeles County, are practically homeless. Providentially, the homes of the citizens have not been destroyed. The necessities of war have only retarded the construction of sufficient housing to meet the needs of the increasing and shifting populations. This is the extent of the dilemma in Los Angeles County. It is the imperative duty of the state and municipal governments to provide them with temporary homes for the time that will be required to meet the pressing demand for permanent homes. There are vast areas in the old country where no homes remain, and others where few have survived the ravages of war. Is it conceivable that there could be any rule of law or equity, or any argument that bears the semblance of reasonableness, which would bar a municipality in such a situation from devoting park lands to the temporary housing of its homeless citizens? We can imagine none and we think the question furnishes its own answer.

Furthermore, the possible interference with recreational uses for the duration of the emergency, of which plaintiff complains, would be too insignificant and inconsequential to justify interference therewith by the courts. The detriment which plaintiff claims the citizens of Los Angeles are due to suffer is not measurable. Plaintiff says in his brief that if the structures can be maintained for three years, they can be maintained for six years. This may be granted. But how could such a brief interruption be measured against the maintenance of the park in perpetuity? The city's plan requires the use of about 160 acres out of a total area of 4,000 acres. To what extent are the recreational facilities of the park interfered with? No facts are stated in the complaint

from which it may even be inferred that there will be a noticeable interference. It is not alleged that playground or other recreational facilities were located upon or adjacent to the 160 acres or that their use will be interrupted. The facts alleged in the complaint are insufficient to show that the acts of the city sought to be enjoined will infringe upon the legal rights of the public in the use of the park, and are devoid of grounds for equitable relief.

Defendants challenge plaintiff's right to maintain this action as a citizen and taxpayer, and urge other grounds for affirmance of the judgment. It is unnecessary to decide these points. The briefs discuss provisions of the city charter which, in view of our decision, do not require interpretation. The question whether under the charter park lands acquired by purchase may be devoted to other public uses will be for decision in the future if, when the present emergency is ended, the city undertakes to devote the land to permanent residential or business use.

The judgment is affirmed.

Wood, J., and Kincaid, J. pro tem., concurred.