[Civ. No. 23717.   Second Dist., Div. Three.   Nov. 16, 1959.]

VAN M. GRIFFITH, Appellant, v. CITY OF LOS ANGELES et al., Respondents.

Arthur E. Briggs for Appellant.

Roger Arnebergh, City Attorney, Bourke Jones and Ralph J. Eubank, Assistant City Attorneys, for Respondents.

VALLÉE, J.—Appeal by plaintiff from an adverse judgment in a suit for an injunction to restrain defendants from further acts in connection with a project designated Toyon Canyon Park Reclamation in Griffith Park, Los Angeles, and for declaratory relief.

On March 5, 1898, plaintiff's parents conveyed to the city

of Los Angeles some 3,800 acres of land known as Griffith Park. The conveyance was made on these conditions:

"To be used as a PUBLIC PARK for purposes of recreation, health and pleasure, for the use and benefit of the inhabitants of the said City of Los Angeles, forever. And this gift and grant is made, and said property is hereby conveyed upon condition that said land shall be used and maintained by said City of Los Angeles and its successors in interest and estate, exclusively as a public park and pleasure ground, for the amusement, recreation, health and pleasure of its inhabitants, and upon the further condition that the name of said park now established by ordinance of said City, to wit, 'GRIFFITH PARK' be continued as the official name and designation of said park; and whenever said tract of land hereby conveyed, or any part thereof shall cease to be used as a park, and for pleasure, amusement, recreation, health, and uses incident to the aforesaid uses according to the intents and meanings of the same, and if said City of its successors in interest or estate shall at any time change the official name of said park from GRIFFITH PARK to some other name or designation, then the lands hereby conveyed shall immediately upon the happening of either of said events, revert to said parties of the first part or to their heirs."

On May 16, 1957, the board of recreation and park commissioners of the city adopted a resolution which recited it had adopted a plan of development of Toyon Canyon in Griffith Park whereby the canyon will be filled and leveled to produce about 40 acres of leveled land for recreational use, and granted permission to the board of public works of the city to proceed with the project in accordance with the plan. The resolution is set out in full in the margin.[1]

---

[1] "WHEREAS, Griffith Park in the City of Los Angeles has a very large percentage of steep land and canyons and very little level land for recreational use, and

"WHEREAS, this Commission has adopted a plan of development of Toyon Canyon in Griffith Park whereby said Canyon will be filled and leveled and produce approximately 40 acres of level land, and

"WHEREAS, the Department of Recreation and Parks has been proceeding with its own material for the land reclamation project herein mentioned, and

"WHEREAS, the Department of Public Works has more material available for the purpose of the land reclamation project, and

"WHEREAS, said Board of Public Works can accomplish the complete land reclamation within 5 to 10 years, which is many years less than it could be accomplished by the Department of Recreation and Parks, and

"WHEREAS, the Board of Public Works of The City of Los Angeles has requested permission to make the land reclamation herein provided

Toyon Canyon was a deep, undeveloped area covering about 40 acres in Griffith Park. On May 16, 1957, pursuant to the resolution, the board of public works began filling, compacting, and leveling the canyon using combustible and inert

for and further to make and perform certain other improvements in said park at no cost to the Department of Recreation and Parks,

"Now, THEREFORE:

" BE IT HEREBY RESOLVED:

"1. That permission is granted to the Board of Public Works to proceed with the land reclamation project in Toyon Canyon in the center of Griffith Park in accordance with the plan therefor adopted by the Board of Recreation and Park Commissioners on MAY 16, 1957.

"2. That said permission is conditioned upon the Board of Public Works complying with all of the following conditions:

"a). The Board of Public Works shall construct and maintain roadways extending from the proposed upper level of the fill near its northwest corner, northerly to intersect Griffith Park Drive, approximately 700 feet easterly of its intersection with Mt. Hollywood Drive; and, from the proposed upper level near its southwesterly corner, southerly to Mt. Hollywood Drive at the nearest convenient point of intersection.

"Reroute the bridle trail along the lower reclamation site access road and provide a crossing in a safer location adjacent to Griffith Park Drive.

"Transfer existing compost at the site to an alternate temporary location within the site for park use.

"b). To use only routes approved by the General Manager of the Department of Recreation and Parks in transporting material to and from the field, including the time of use of the route, it being understood that said route and time will be so arranged as not to interfere with traffic of park users during Saturdays, Sundays and Holidays.

"c). The Board of Public Works shall furnish sufficient flagmen to provide proper traffic control at all times.

"d). Make adequate provisions for the accommodation of material of the Department of Recreation and Parks on the site with the further privilege to said Department of disposal of material at any other site under the control of said Board of Public Works in eventual quantities of not less than the capacity of Toyon Canyon, it being understood that the said Board of Public Works does not have the necessary capacity at the time of this resolution, but that said Board is initiating action to acquire further capacity to be used, among other things, for this purpose.

"e). To grant to other budgetary departments of The City of Los Angeles the privilege of furnishing material to the Toyon Canyon land reclamation project.

"f). To perform all of the operations in a manner to obtain the maximum practical compaction.

"g). To perform all operations in accordance with the requirements for the operation of sanitary fills prescribed by the Board of Public Works from time to time.

"h). To install a water pipe adequate for the land reclamation project, for fire protection, and for permanent use for park purposes after the land reclamation project is completed.

"i). To provide the necessary temporary and permanent control of the surface and drainage waters in and near the project.

"j). To provide ingress and egress to the land reclamation project, with adequate provisions for the safety of the public.

"k). To provide for the prevention of erosion of the slopes in the area by planting, or otherwise, with particular attention to be given to

materials collected from residences in Los Angeles, earth fill, and cover.

Plaintiff, the only heir of the grantors of Griffith Park, brought this suit to restrain defendants from proceeding with the project, alleging it is in violation of the trust on which Griffith Park is held by the city and the charter of the city. In a second count, plaintiff alleged a controversy exists between him and defendants concerning the right of defendants to dump rubbish and refuse in and to fill Toyon Canyon.

The judgment denies an injunction and declares the project was adopted in good faith for the purpose of developing a site of about 40 acres to be devoted exclusively to recreational and park purposes; the work done in connection with the development and uses of Griffith Park is directly incidental to its use for recreational and park purposes; and such uses are not violative of any one of the conditions on which the lands were granted to the city.

Plaintiff's first point is that the Toyon Canyon project violates the condition of the grant and the charter of the city. At the time of the grant, the charter provided:

"All lands and real property located in the City of Los Angeles and which have been heretofore, or which may be hereafter, set apart and dedicated for the use of the public as a public park or parks, shall forever remain to the use of the public as such park or parks, inviolate, and no part of said lands or real property shall ever be used or occupied for any other purpose."

Plaintiff argues that the project is obviously one to make Toyon Canyon a rubbish and refuse dump for the city and that it is unlawful to transform Griffith Park into a city dumping ground. The court found to the contrary and its finding is supported by substantial evidence.

The general manager of the department of recreation and parks testified that according to the plan which had been adopted and approved by that department on completion of the project "[t]he area would be planted to grass, as, for example, for the fields of baseball, soft ball, football, open play activities, archery course in grass, the grass being be-

---

the prevention of scars to the natural hillsides and the toe and the retention of the fill.

"1). To provide for and maintain sufficient sanitary installations for the use of all persons permitted within the area.

"m). To maintain all roads within the park which are used by vehicles connected with the land reclamation project for the duration of the project."

tween the point of shooting and the targets, and tennis courts at one location where the fill is of less depth than elsewhere, and picnic installations largely in the periphery of that little area''; that the operations being conducted in Toyon Canyon since the adoption of the resolution have not ''impaired any park use that was being made of that area before that time''; and that the operations have not ''interfered with the uses and enjoyment offered to the public by Griffith Park.'' There was testimony that one of the common and sound engineering processes for reclaiming mountainous and marginal land areas involves the utilization and compaction of inert refuse materials capped with successive intervening layers of earth and that this process is recognized as a method of developing and improving public parks. The trial judge, with the consent of counsel for the parties, visited Griffith Park and viewed Toyon Canyon and the operations being carried on there.

█ It is true, as plaintiff states, that when a grant deed is for a specified, limited, and definite purpose the subject of the grant cannot be used for another or different purpose. (*Griffith* v. *Department of Public Works*, 141 Cal.App.2d 376, 380 [296 P.2d 838].) █ However, a dedication must be understood and construed with reference to its primary object and purpose. Nothing is improper which conduces to that object. The real question is whether the use in a particular case, and for a designated purpose, is consistent or inconsistent with such primary object. Such use is authorized as is fairly within the terms of the dedication and reasonably serves to fit the property for enjoyment by the public in the manner contemplated. █ The dedicator is presumed to have intended the property to be used by the public in such way as will be most convenient and comfortable, and according to not only the proprieties and uses known at the time of the dedication, but also to those justified by lapse of time and change of conditions. (*Wattson* v. *Eldridge*, 207 Cal. 314, 320 [278 P. 236].) It cannot reasonably be supposed that the dedicators intended otherwise than that Griffith Park should respond to whatever demands new improvements and increased facilities might make on it, so long as such demands always be consistent with the conditions stated in the grant.

█ The devotion of a reasonable portion of a public park to picnic grounds, baseball diamonds, softball grounds, football fields, golf courses, archery courses, tennis courts, and other open play activities, with suitable appliances for these

forms of public amusement and recreation, comes strictly within the proper and legitimate uses for which public parks are created. (*Caulfield* v. *Berwick,* 27 Cal.App. 493, 497 [150 P. 646]. Also see *Vale* v. *San Bernardino,* 109 Cal.App. 102, 107-108 [292 P. 689]; *Los Angeles Athletic Club* v. *Long Beach,* 128 Cal.App. 427, 431 [17 P.2d 1061].) And they are uses necessarily provided for in the deed to the city. The fact that the fill to provide level land for these uses is in part combustible and inert materials is of no moment. It is the ultimate result which matters, and that is the accomplishment of a purpose which reasonably serves to fit the property for enjoyment by the public in the manner contemplated by plaintiff's predecessors.

Plaintiff cites *County of Los Angeles* v. *Dodge,* 51 Cal.App. 492 [197 P. 403], for the proposition that diversion from park to playground uses is a violation of the grant. That case involved the city charter. The court held the city was not bound under the charter to maintain an established public playground forever as it was bound to maintain a park, but could use the playground area for a stadium since a public playground did not come within the definition of the word "park" to the effect that " 'a park is a piece of ground set apart and maintained for public use, and laid out in such a way as to afford pleasure to the eye as well as opportunity for open air recreation.' " That case is not in point. The court stated (p. 506):

"We are aware that it has been determined that the setting aside of a part of a park as a playground is not inconsistent with park purposes (*Caulfield* v. *Berwick,* 27 Cal.App. 493 [150 P. 646]), but that is far from saying that a playground is itself a public park. In fact, the case cited indicates the contrary, for it is to the effect, the italics being ours, that 'the devotion of *a reasonable portion* of a public park to tennis courts, croquet grounds and children's playgrounds' comes within the uses for which public parks are created."

The court found the acts of defendants in Griffith Park, of which plaintiff complains, do not occur upon nor otherwise affect any part of the lands comprising the park other than those which are the subject of the deed from plaintiff's predecessors to the city. It appears that Griffith Park consists of more land than was conveyed to the city by plaintiff's predecessors. Toyon Canyon is entirely within the area covered by the grant from plaintiff's predecessors to the city. Plaintiff asserts the finding is unsupported by the evidence.

The assertion is unfounded. ▮ Plaintiff's contention is that the evidence shows the entire park will be injured by the project and consequently the finding is erroneous. Since the court found on substantial evidence that the objectives of the plan are recreational and park purposes within the area covered by the grant, it follows that the point is untenable. (See *Griffith* v. *City of Los Angeles*, 78 Cal.App.2d 796, 798 [178 P.2d 793].)

The court found that the resolution of May 16, 1957, for the development of the project was adopted by the board of recreation and park commissioners in good faith as a means of implementing an accelerated plan for the reclamation and development of Toyon Canyon for recreational and park purposes; that the intent and purpose of the project and the objectives to be obtained are recreational and park purposes; and the methods being employed are directly incidental to and reasonably calculated to achieve those objectives. Plaintiff contends these findings are "at variance with the evidence." ▮ The motives of the board of recreation and park commissioners in passing the resolution are of no consequence and may not be considered so long as the conditions justify their action. (*Sunny Slope Water Co.* v. *City of Pasadena*, 1 Cal.2d 87, 98-99 [33 P.2d 672] ; *McCarthy* v. *City of Manhattan Beach*, 41 Cal.2d 879, 894 [264 P.2d 932] ; *McCaslin* v. *City of Monterey Park*, 163 Cal.App.2d 339, 351 [329 P.2d 522]. *Cf. In re Petersen*, 51 Cal.2d 177, 182 [331 P.2d 24].)

▮ Plaintiff claims there was "no necessity and no occasion for reclaiming Toyon Canyon." The board, under the city charter, sections 172-178, has been delegated the duty to maintain and control the park and the power to determine the necessity and desirability of activities incident thereto in view of park purposes. The resolution was duly and regularly adopted by the board and constitutes official action. It is presumed that official duty has been regularly performed and that the law has been obeyed. (Code Civ. Proc., § 1963, subds. 15, 33.) We cannot interfere with the board's determination.

A review of the record convinces us that all of the numerous findings of which plaintiff complains are supported by the evidence. We briefly comment on the following additional findings which he challenges as "untrue and at variance with the evidence."

▮ 1. The essential aspect of the plan is filling, compaction, and leveling of Toyon Canyon by utilizing fill and cover

operations in connection with the depositing of combustible and inert materials collected from residences within the city.

Plaintiff claims this finding amounts to a partial admission that it was the board's intent to make Toyon Canyon into a city dump. The finding declares the means by which the leveling of the canyon is to be accomplished and is fully supported by the evidence. The selection of the means and methods to achieve the leveling of the canyon to provide improved park facilities is within the scope of the powers delegated to the board.

2. The topography of Griffith Park is such that less than 20 per cent of the area in its natural state is usable for park purposes commensurate with the recreational requirements of the metropolitan area intended to be served by the terms of its dedication.

There is no merit in plaintiff's contention that this finding is not supported by the evidence. There was testimony that, based on studies and surveys by the department of recreation and parks, level areas are required for certain recreational facilities including places for displaying exhibits, picnicking, parking automobiles, and for participating in organized activities such as playing ball. There was testimony that the present level areas in the park are inadequate to meet the requirements for level terrain. Only 800 acres of the total 4,250 acres, as the park is presently constituted, are of less than a 10 per cent slope. It should be noted the court did not find that less than 20 per cent of the park was usable in its natural state for park purposes; the finding states that less than 20 per cent was usable for park purposes commensurate with the recreational requirements of the area intended to be served.

Plaintiff asserts it was the intention of the donors of Griffith Park "that the mountain area was to remain in its original state of nature for all time." This is not a condition of the grant. On the contrary, the grant expressly says that Griffith Park is to be used "for purposes of recreation, health and pleasure"; that it is to be "used and maintained" by the city "exclusively as a public park and pleasure ground, for the amusement, recreation, health and pleasure of its inhabitants"; and "uses incident to the aforesaid uses according to the intents and meanings of the same." The court correctly ruled that evidence of the intention of the grantors "that the mountain area was to remain in its original state of nature for all time" was inadmissible.

3. The reclamation of canyons and ravines by fill and

cover operations to provide level land areas is recognized and accepted as a sound engineering practice which has been and is being used to create, develop or improve park lands throughout this state as well as the United States.

Plaintiff asserts this finding is irrelevant to the issues of the case. If so, it is merely surplusage.

■ Over plaintiff's objection a qualified civil engineer called by defendants testified that such practice was sound engineering. Plaintiff asserts error. There was no error. In view of plaintiff's claim that leveling the canyon by using combustible and inert materials collected from residences within the city was a subterfuge, the evidence was properly received.

■ 4. The said fill and cover operations (the reclamation of canyons by fill and cover operations to provide level land) are the same as those employed in the Toyon Canyon project and they take place in a nonunique area involving less than one per cent of the total area of the park.

Plaintiff asserts this finding is ambiguous, indefinite, and uncertain. We disagree. The finding states, in effect, that the operations in Toyon Canyon are the same type of operations which have been recognized and accepted as sound engineering practice for the reclamation of canyons and ravines to provide level land areas.

The second part of the finding—that the operations take place in a nonunique area—is supported by the evidence. There was testimony that the flora was comparable to that elsewhere in the park and that nothing distinguished this canyon from others in the park. Further, the trial judge's inspection of the area with the consent of counsel is evidence in the case and "may be used alone or with other evidence to support the findings." (*McCarthy* v. *City of Manhattan Beach,* 41 Cal.2d 879, 889 [264 P.2d 932].)

■ 5. The existing improvements in Griffith Park, such as the roads, observatory, Greek Theatre, golf course, etc., required altering the topography of the area concerned; and such alteration involved operations similar in character to those in Toyon Canyon except as to the type of filling material utilized.

This finding is amply supported by the evidence. The testimony of Mr. Shearer who, as park manager, had control and supervision of nearly all of these operations indicates that the topography of the areas in question was altered by movement of earth in each case. Mr. Shearer was plaintiff's witness.

■■■■ 6. The Toyon Canyon park reclamation project does not interfere with nor has it curtailed any preexisting or proposed use of the park; and the operations incident thereto are conducted in a reasonable, safe, unostentatious, and inoffensive manner.

Plaintiff argues that since, as estimated in the resolution, it will take 5 to 10 years to fill the canyon, Toyon Canyon will "cease to be a park" and the road used by the disposal trucks will be virtually closed. There is no evidence in the record to support the argument concerning the trucks. Temporary interference with the use of the area for park purposes is an unavoidable incident in carrying out the ultimate purpose. Since the area is less than one per cent of the total park area and is located in an isolated area of the park, it appears as a necessary inconvenience to the public as was the interference with use of another area of the park for the two-year period (as shown in the record) during the construction of the observatory. Further, as stated in the resolution, by the use of inert materials collected from residences throughout the city the "Board of Public Works can accomplish the complete land reclamation within 5 to 10 years, which is many years less than it could be accomplished by the Department of Recreation and Parks."

Plaintiff's final contention is that no declaratory judgment has been made on the issues alleged in the second count for declaratory relief. He urges that he should have had a declaration of his rights under the deed even though injunction is denied. Count two of plaintiff's complaint alleges the same controversy which is alleged in the first count and raises the same issues. The prayer asks that defendants be enjoined from carrying on their present project. The second count of the complaint alleges a controversy only in respect to the activities in Toyon Canyon. We construe the judgment as set out in the margin as declaring the rights of the parties with respect to the Toyon Canyon project.[2] There was no prayer for declaratory relief as to either the present or any future

[2] "The Toyon Canyon Park Reclamation Project of which the plaintiff complains was adopted by the defendant, Board of Recreation and Park Commissioners, in good faith for the purpose of developing a site of approximately 40 acres to be devoted exclusively to recreational and park purposes and the acts and operations by and on behalf of the defendant, City of Los Angeles, in connection with such development of which the plaintiff complains are uses of Griffith Park directly incidental to its use for recreational and park purposes and said uses are not violative of any one or more of the conditions upon which the said lands were granted to the defendant, City of Los Angeles."

acts of defendants. Plaintiff did not seek to effect a reversion of the park lands. At pretrial he stipulated that the remedy he should be afforded under the declaratory relief count should only be considered in the event he prevailed on count I. The findings, conclusions, and judgment adequately dispose of all material issues presented to the trial court.

Affirmed.

Shinn, P. J., concurred.

A petition for a rehearing was denied December 7, 1959.